**KEENE CORPORATION, Appellant,**

v.

**PARAFLEX INDUSTRIES, INC., Sim-Kar Lighting Fixtures Co., Inc.**

**No. 80–2242.**

United States Court of Appeals, Third Circuit.

Argued March 26, 1981.

Decided July 9, 1981.

Rehearing and Rehearing En Banc Denied Aug. 6, 1981.

Goldberg & Carlin, Newark, N. J., and Anderson, Russell, Kill & Olick, P. C., New York City, for appellant; Nicholas L. Coch (Argued), John E. Daniel, Philip R. Carlin, Newark, N. J., of counsel.

Scarpone & Edelson, P. A., Newark, N. J., for appellees; James A. Scarpone, Newark, N. J. (argued), of counsel.

Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

We must in this case consider the scope and meaning of the doctrine of aesthetic functionality pursuant to which the manufacturer of a product is deprived of the right to enjoin imitations of the product's design or configuration.

II.

The facts are relatively straightforward. Keene Corporation (Keene), appellant, manufactures and markets a non-residential lighting fixture, the "Wall Cube", an outdoor wall-mounted luminaire. Luminaires of this type are intended to be mounted (typically 15 to 20 feet in the air) on the outside walls of commercial buildings, such as factories and apartment buildings, to illuminate the adjacent area. The design of the exterior housing of Keene's Wall Cube consists of two oblong right triangular solids, one being a bronze colored metal housing and the other being a slightly smaller glass lens. The two parts are joined along the plane opposite the right angle of each triangular solid to form an object approximating a rectangular solid. When mounted, the glass lens forms the bottom and front of the luminaire, while the metal housing forms the top and back. The design of the Wall Cube is not patented.

In 1979 appellee, Paraflex Industries, Inc. (Paraflex), began to market the housing of an outdoor wall-mounted luminaire which is nearly identical to and was admittedly copied from the exterior of the Keene Wall Cube. Paraflex imports the glass lens and metal housing manufactured for it in Taiwan and sells these parts to electrical manufacturers such as appellee Sim-Kar Lighting Fixture Co., Inc. who supply the electrical parts, and assemble and market the finished product under their own names. For convenience, the look-alike unit will be referred to as the Paraflex unit.

In this action Keene seeks to enjoin marketing of the Paraflex luminaire, alleging false representation of goods, common law trademark infringement and unfair competition under section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a) (1976) and New Jersey state law.[1] It is conceded

---

* Honorable John M. Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. This court has recently held that suit brought under section 43(a) of the Lanham Act survives the stringent limitations on state unfair competition laws imposed by the decisions of the Supreme Court in *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). *See SK&F, Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1065–66 (3d Cir. 1980).

that Paraflex copied Keene's Wall Cube, that the exteriors of the two products are virtually identical, and that the Keene unit had acquired a secondary meaning in that it had come to be recognized in the industry as a Keene product. To avoid confusion of source and to prevent palming off, the district court preliminarily and then permanently ordered Paraflex to affix to its luminaire a metal plate containing the statement that the fixture was "Made in Taiwan" for one of Paraflex's customers and that it was "Not a Product of Keene Corporation." The court refused to enter an order either preliminarily or permanently enjoining Paraflex from copying the design of the Keene unit, because the court concluded that there was a functional aspect to the design of the Keene luminaire and therefore its exclusive appropriation by Keene was precluded by the doctrine of aesthetic functionality.

### III.

■ Before turning to the specific findings in this case, it will be useful to review the rationale for and application of the doctrine of aesthetic functionality. One of the essential elements of the law of trademarks, even at common law where it was part of the law of unfair competition, was the principle that no legal protection would be available for products or features that were functional. *See* 1 J. McCarthy, Trademarks and Unfair Competition § 7.23 (1973); Note, *Unfair Competition and the Doctrine of Functionality*, 64 Colum.L.Rev. 544, 552 (1964). The purpose of the rule precluding trademark significance for functional features is to prevent the grant of a perpetual monopoly to features which cannot be patented. *Sylvania Electric Products v. Dura Electric Lamp Co.*, 247 F.2d 730, 732 (3d Cir. 1957). If this area of the law were to be compartmentalized, one

could ascribe to the patent laws protection of those utilitarian features which Congress has chosen to protect, and to the trademark law protection of fanciful or arbitrary features which have achieved recognition as indicia of origin. Products or features which have not qualified for patent protection but which are functional are in the public domain, and are fair game for imitation and copying. Our natural inclination to disapprove of such conduct must give way to the public policy favoring competition, even by slavish copying, of products not entitled to federal patent protection.

■ The focal question is whether certain features or products are functional, and hence not susceptible of exclusive appropriation. Where the feature is essential to the utility of the item, as was the blue dot on the *Sylvania* photographic flashbulbs which served to indicate in the course of manufacture those bulbs which were defective and to indicate to the consumer those bulbs which later developed air leakage and were unsuitable for use, it is now well-established that the functionality prevents the acquisition of a trademark in that feature. *See Sylvania Electric Products v. Dura Electric Lamp Co., supra.* The concept of functionality has not been limited, however, to those features that are strictly utilitarian. A more expansive approach was taken in the Restatement (First) of Torts:

§ 742. Functional and Non-Functional Features.

A feature of goods is functional . . . if it affects their purpose, action or performance, or the facility or economy of processing, handling or using them; it is non-functional if it does not have any of such effects.

Restatement of Torts § 742 (1938).[2] This expansive view of functionality is further reflected in the comment to that Restate-

---

2. This section is part of a group of sections on unfair competition and trade regulation which were not included in the Restatement (Second) of Torts because these fields were developing into independent bodies of law with diminishing reliance upon the traditional principles of tort law. 4 Restatement (Second) of Torts 1–2 (1979) (Introductory Note).

ment section where there is a reference to aesthetic functionality.

The doctrine of aesthetic functionality has been variously articulated and applied by those courts which have had occasion to consider it. The broadest scope to aesthetic functionality, which in turn permits the widest imitation, is illustrated by the Ninth Circuit's decision in *Pagliero v. Wallace China Co.*, 198 F.2d 339 (9th Cir. 1952), where the court refused to enjoin copying of hotel china with distinctive designs. The court concluded that even though plaintiff may show that the china acquired a secondary meaning, the designs had become "functional". It stated, "If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright." *Id.* at 343.[3] Some support for this view, which defines aesthetic functionality in terms of consumer acceptance, may be gleaned from the comment to the Restatement section.[4]

The difficulty with accepting such a broad view of aesthetic functionality, which relates the doctrine to the commercial desirability of the feature at issue without consideration of its utilitarian function, is that it provides a disincentive for development of imaginative and attractive design. The more appealing the design, the less protection it would receive. As our ambience becomes more mechanized and banal, it would be unfortunate were we to discourage use of a spark of originality which could transform an ordinary product into one of grace. The doctrine of aesthetic functionality need not be construed in such a manner for it to fulfill its important public policy function of protecting free competition.

Instead, the inquiry should focus on the extent to which the design feature is related to the utilitarian function of the product or feature. When the design itself is not significantly related to the utilitarian function of the product, but is merely arbitrary, then it is entitled to protection as a design trademark if it has acquired the distinctiveness necessary to achieve a secondary meaning. Despite the language used in some of the opinions in this area which suggest a broader scope for the doctrine of aesthetic functionality, in fact the holding of many of those cases is consistent with this view of the doctrine.

In the oft-cited concurrence of Judge Rich to the decision of the Court of Customs and Patent Appeals which held that a distinctive wine decanter could function as a trademark, he concluded that the design of the wine bottle was "of such an *arbitrary* nature that depriving the public of the right to copy it is insignificant . . . ." *Application of Mogen David Wine Corp.*, 328 F.2d 925, 933 (C.C.P.A.1964) (emphasis in original). Similarly, the stylized key design featured on the trademark applicant's jewelry was held to be entitled to registration because the key configuration was not dictated by "functional considerations." The court stated:

> The stylized key design in the present case may have the function of attracting purchasers, but the shape of the jewelry, like the mark, is arbitrary and nonessential to a functioning piece of jewelry.

*Application of Penthouse Int'l Ltd.*, 565 F.2d 679, 682 (C.C.P.A.1977). The unique exterior design of a bulk commodity semitrailer which featured a twin hopper design was held to be subject to protection against imitation because its distinctive features were only "incidentally functional." *Truck Equipment Service Co. v. Fruehauf Corp.*,

---

**3.** In *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769 (9th Cir. 1981), the Ninth Circuit may have retreated somewhat from its *Pagliero* language since it expressly disapproved the district court's holding that any feature of a product which contributes to consumer appeal and saleability of the product is, as a matter of law, a functional element of that product. *Id.* at 773.

**4.** "When goods are bought largely for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended." Restatement of Torts § 742, Comment a (1938).

536 F.2d 1210, 1218 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). As the Second Circuit stated recently, in upholding the trademark for the uniforms worn by the Dallas Cowboys Cheerleaders, when a feature of the construction of the item is arbitrary, the feature may become a trademark even though it serves a useful purpose. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 204 (2d Cir. 1979).

On the other hand, where the design is in essence utilitarian, such as the outline shape of the deck of a shaking table held functional in *Application of Deister Concentrator Co.,* 289 F.2d 496, 505 (C.C.P.A.1961), the courts have precluded plaintiffs from obtaining a potentially perpetual monopoly. Even mere color, such as the pink color of tablets designed for an upset stomach, may have functional value. *Norwich Pharmacal Co. v. Sterling Drug, Inc.,* 271 F.2d 569, 572 (2d Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). In considering this issue recently, Judge Gibbons summarized for this court the distinction between functionality and non-functionality as follows: "Proof of nonfunctionality generally requires a showing that the element of the product serves no purpose other than identification." *SK&F, Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F.2d 1055, 1063 (3d Cir. 1980).

## IV.

The facts in this case present a unique situation. The luminaire itself is essentially a utilitarian product, used to light exterior area. However, because it is a wall-mounted luminaire, as distinguished from a free-standing street lamp, part of its function includes its architectural compatibility with the structure or building on which it is mounted. Thus its design configuration, rather than serving merely as an arbitrary expression of aesthetics, is intricately related to its function.

We believe this was the basis for Judge Meanor's finding of aesthetic functionality and his refusal to enjoin copying of the design of the Keene Wall Cube. His pivotal finding was that "architectural compatibility between the luminaire selected and the configuration or the design of the building on which it is to be placed is often a significant criteria of selection." Although he recognized that architectural compatibility was not the only consideration nor was it always a consideration in the selection process, he found that it was "a sufficiently significant criterion in a sufficiently number [sic] of elections so that the design of a particular wall mounted luminaire has aesthetic or architectural functionality."

Keene argues that the district court's finding that the Wall Cube design was functional is clearly erroneous. It points to evidence in the record to support its position that outdoor wall-mounted luminaires are intended for use in areas where aesthetics are not important. Appellees for their part, stress the following evidence: (1) advertising brochures of numerous manufacturers of outdoor luminaires, including Keene, which depict luminaires being used where aesthetics are important; (2) Keene's advertising brochure, which refers to the Wall Cube as an "architectural luminaire" and boasts that the product's "crisp clean lines match contemporary architectural styling;" (3) testimony of two electrical engineers, the individuals who generally specify the fixtures for a construction project, that aesthetics play a part in their selection of lighting fixtures; (4) testimony of an architect that architects may reject a fixture chosen by an electrical engineer if it is incompatible with the design of the building; and (5) testimony of Paraflex's Vice President that the design of contemporary buildings is characterized by straight lines and basic geometric shapes and that architects therefore demand lighting fixtures which are characterized by straight lines and basic geometric shapes. From our review of the record, we cannot denominate as clearly erroneous the district court's finding that the design of the Wall Cube was functional to a sufficient extent so that on balance the interest in free competition in the luminaire market outweighed Keene's interest in having the exclusive right to the design of the Wall Cube.

Keene argues that the court's finding that its product had acquired a secondary meaning is inherently inconsistent with the court's finding of aesthetic functionality. However, we see nothing inconsistent between a finding that a distinctive design has become sufficiently identified with its original producer to serve as an indication of its source and a finding that the design is nonetheless not insignificantly related to its utilitarian function. This is amply supported by case law. In *SK&F, Co. v. Premo Pharmaceutical Laboratories, Inc.* the court referred to the *"conjunctive* requirements of secondary meaning and nonfunctionality." 625 F.2d at 1063 (emphasis added). The courts have generally treated the issue of functionality, including aesthetic functionality, as a separate consideration from secondary meaning. *See, e. g., Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 776 (9th Cir. 1981); *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d at 1217, 1219; *Sylvania Electric Products v. Dura Electric Lamp Co.*, 247 F.2d 733–34; *Famolare, Inc. v. Melville Corp.*, 472 F.Supp. 738, 744–45 (D. Hawaii 1979).

■ Keene also contends that the court failed to consider whether competition would be substantially hindered by restricting the copying of the Wall Cube, and that this consideration is the test of functionality. As we previously noted, the policy predicate for the entire functionality doctrine stems from the public interest in enhancing competition. Thus both the Restatement and courts considering this issue have referred to the question "whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition." Restatement of Torts § 742, Comment a (1938).

Judge Meanor gave ample consideration to this factor. He found that there is "a limited number of designs" possible for an outdoor wall-mounted luminaire. He noted that presently there are around twelve or fifteen wall-mounted luminaires from which to choose, and perceived a danger to competition in the luminaire market if manufacturers were given the exclusive right to a design. Although Keene would have us adopt a standard inquiring whether the specific design features of the product "were competitively essential," we believe that is an unnecessarily narrow view of functionality. This court has previously indicated that merely because there are other shapes and designs "which defendant could use and still produce a workable" product, the design used is not thereby non-functional. *See Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Co.*, 202 F.2d 172, 175–76 n.10 (3d Cir.), *cert. denied*, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953). The same approach was followed by the Court of Customs and Patent Appeals in *Application of Honeywell*, 532 F.2d 180, 182 (C.C.P.A.1976), when, in affirming a refusal to register as a mark a round thermostat covering with a transparent center "button" through which the temperature setting could be viewed, the court quoted with approval the opinion of the Patent Appeal Board:

The fact that both the cover and the thermostat are round does not detract from the functional characteristics thereof. In fact, it may add to the utilitarian aspects. There are only so many basic shapes in which a thermostat or its cover can be made .... The fact that thermostat covers may be produced in other forms or shapes does not and cannot detract from the functional character of the configuration here involved.

Because there are only a limited number of configurations or designs for a luminaire which are architecturally compatible with the type of structures on which they are placed, the selection of a luminaire design does not have the unlimited boundaries as does the selection of a wine bottle or ashtray design, and the court's finding that competition will be stifled is again not clearly erroneous.

Keene's final argument is that the remedy to which it has been relegated, *i. e.*, the injunction requiring labeling imposed by the district court to prevent confusion and palming off, is inadequate to insure against the possibility of confusion of source. Again it urges that it is therefore entitled

to an injunction against manufacture and sale of the imitative product. The most direct response to this contention is afforded by the Supreme Court's treatment of a similar claim in the *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231–32, 84 S.Ct. 784, 788–89, 11 L.Ed.2d 661 (1964), where it said:

> In the present case the "pole lamp" sold by Stiffel has been held not to be entitled to the protection of either a mechanical or a design patent. An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so. What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws. That Stiffel originated the pole lamp and made it popular is immaterial. "Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested." *Kellogg Co. v. National Biscuit Co., supra*, 305 U.S., at 122, [59 S.Ct. at 115].
>
> \* \* \* \* \* \*
>
> Sears has been held liable here for unfair competition because of a finding of likelihood of confusion based only on the fact that Sears' lamp was copied from Stiffel's unpatented lamp and that consequently the two looked exactly alike. Of course there could be "confusion" as to who had manufactured these nearly identical articles. *But mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied.* (emphasis added)

For the foregoing reasons, the order of the district court will be affirmed.