**SECOND EARTH ENTERPRISES, INC., et al.**

v.

**ALLSTAR PRODUCT MARKETING CO., et al.**

Civ. A. No. 88–7814.

United States District Court, E.D. Pennsylvania.

March 6, 1989.

303

**304**

John J. Yannacone, Media, Pa., for plaintiffs.

Jonathan D. Bennett, Philadelphia, Pa., for defendants, Innovative Touch, Inc., Budd–Lin Intern., Unique World of Merchandise, Inc., and Charles Budd.

Ruben Honik, Philadelphia, Pa., for defendants, Allstar Product Marketing Co., and Alan Dorfman.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

### I. INTRODUCTION

This action is brought under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), and under Pennsylvania common law, for unfair competition, misappropriation of trade secrets, fraud, breach of fiduciary duty, quantum meruit and promissory estoppel. The matter is before the Court at this time on plaintiffs' Motion for Preliminary Injunction.

Plaintiffs, Second Earth Enterprises, Inc. and Marc C. Seiver, t/a Second Earth and Second Earth Enterprises (hereinafter referred to collectively as "Second Earth"), market disposable lighters wrapped in a prismatic foil under the trade-name "Light–Ups," and writing pens wrapped in a prismatic foil under the trade-name "Light–Writes." Defendants Alan Dorfman and Allstar Product Marketing Company (here-inafter referred to collectively as the "Pennsylvania Defendants") are novelty and impulse product merchandisers which market disposable lighters wrapped in a prismatic foil under the trade-name "Lazer Lighter." Defendants Charles A. Budd, Jr., Unique World of Merchandise, Budd–Lin International, Inc. and Innovative Touch, Inc. (hereinafter referred to collectively as the "New Jersey Defendants") market disposable lighters wrapped in a prismatic foil under the trade-name "Lazer Visions," and writing pens wrapped in a prismatic foil under the trade-name "Lazer Writer."

None of the parties manufacture the disposable lighters, writing pens or the prismatic foil. All of the parties buy the lighters and pens and the prismatic foil separately, and wrap the lighters and pens with the foil themselves. In addition, all of the parties purchase prismatic foil manufactured and sold by The Diffraction Company.

Second Earth seeks to preliminarily enjoin the Pennsylvania Defendants and the New Jersey Defendants from selling any disposable lighters or pens wrapped in prismatic foil manufactured by The Diffraction Company. The claim for injunctive relief pursuant to Fed.R.Civ.P. 65(a) is based on alleged Trade Dress infringement under the Lanham Trademark Act, 15 U.S.C. § 1125(a), and unfair competition under the Pennsylvania common law.

The Motion for a Preliminary Injunction will be denied.

### II. BACKGROUND

The Pennsylvania Defendants have been in the novelty and impulse merchandising business since 1983. Some time in the Spring of 1986, plaintiff Marc C. Seiver first contacted defendant Alan Dorfman to determine whether Mr. Dorfman would be interested in marketing or selling novelty products produced by Mr. Seiver and his company, Second Earth. Mr. Dorfman and Mr. Seiver cooperated in at least one business venture between the Spring of 1986 and November of 1986.

In November of 1986, Mr. Seiver contacted Mr. Dorfman regarding an idea for a "new" novelty product produced by Mr. Seiver—a disposable lighter wrapped in prismatic foil which, according to Mr. Seiver, caused the lighter to "light up." For that reason, Mr. Seiver named the product "Light–Ups." Mr. Dorfman agreed to test market the Light–Ups lighters, and did so.

Mr. Seiver does not claim that he has a protectable interest in prismatic foil or disposable lighters. Moreover, he does not claim a protectable interest in lighters wrapped in prismatic foil. Indeed, the parties have stipulated that a disposable lighter wrapped in prismatic foil was marketed as early as 1971 by the Ronson Company, and Glint Corporation started marketing Mini–Bic disposable lighters wrapped in prismatic foil in 1986, prior to any sales of Light–Ups. Rather, Mr. Seiver claims that the protectable interest is his idea to wrap certain prismatic foil manufactured by The Diffraction Company around a disposable lighter, causing the lighter to "light up."

In early 1987, Mr. Seiver first placed Light–Ups on the market. In the Fall of 1987, Mr. Dorfman contacted Mr. Seiver and advised that he was interested in purchasing Light–Ups from Second Earth and reselling the product to retailers. From this time until February, 1988, Mr. Seiver and Mr. Dorfman attempted unsuccessfully to negotiate an agreement controlling the marketing of Light–Ups. At a meeting between Mr. Seiver and Mr. Dorfman held on February 5, 1988, Mr. Dorfman refused to sign any non-competition or non-disclosure agreement proposed by Mr. Seiver concerning Light–Ups or any other product wrapped in prismatic foil. On February 10, 1988, the Pennsylvania Defendants submitted a purchase order to Second Earth for wrapping 11,400 lighters with prismatic foil.

On February 14, 1988, at a trade show in New York City, Mr. Seiver discovered that Mr. Dorfman was displaying lighters wrapped by Second Earth under the trade-name "Lazer Lighter." The evidence is unclear as to when the Pennsylvania Defendants began marketing the foil wrapped lighters as Lazer Lighters.

Also on February 14, 1988, at the same trade show, Mr. Seiver first met defendant Charles A. Budd, Jr. Mr. Seiver contacted Mr. Budd again in March, 1988 and started a business relationship with the New Jersey Defendants; at that time, the New Jersey Defendants began selling Light–Ups and Light Writes supplied by Second Earth as independent sales representatives. The New Jersey Defendants never signed a non-competition or non-disclosure agreement with Second Earth.

In July 1988, Second Earth terminated its relationship with the New Jersey Defendants after receiving information that the New Jersey Defendants were misrepresenting their relationship with Second Earth to retailers. After the termination of the relationship with Second Earth, the New Jersey Defendants began marketing prismatic foil wrapped lighters under the trade-name "Lazer Visions" and prismatic foil wrapped pens under the trade-name "Lazer Writer."

Light–Ups, Lazer Lighter and Lazer Visions lighters are all nearly identical looking lighters. The disposable lighters employed in all three products are similarly shaped, although the lighter marketed by the Pennsylvania Defendants has more defined edges. The prismatic foil used in the three products is marketed by The Diffraction Company. Many of the foil designs are identical. None of the individual wrapped lighters bears the product or company name, although the lighter manufacturer is identified.

Lazer Writer and Light Write pens are also identical to each other. The basic pen is manufactured by the same company. Both products are wrapped with prismatic foil manufactured by The Diffraction Company.

Originally, the packaging of the lighters was similar. The lighters were, for the most part, marketed in packages of fifty units; the packages were supplied by the lighter manufacturer. The header cards used with the packages all employed silk screening on a piece of prismatic foil. The

Lazer Visions and the Light–Ups were further similar because they both used header cards with solid letters and solid borders on the foil. Lazer Lighters employed prismatic lettering and a prismatic border on the header card.

Lazer Lighters are currently packaged in a new display, called a step display. The appearance is much different from the other fifty lighter displays.

The packaging of the pens is not identical. Light Writes are sold from package displays of sixty-four pens. Lazer Writers are sold from package displays of forty-eight pens. The header cards on each package, identifying the product, are not similar in design.

### III. STANDARD FOR A PRELIMINARY INJUNCTION

■ To prevail on a motion for a preliminary injunction on an action for trade dress infringement under the Lanham Trademark Act, 15 U.S.C. § 1125(a), the movant must establish the following:

1. That there is a reasonable probability of success on the merits;

2. That absent preliminary injunctive relief the movant will suffer irreparable harm *pendente lite;*

3. That the balance of equities favors the movant; and,

4. That granting preliminary injunctive relief is in the public interest.

*American Greetings Corp. v. Dan–Dee Imports, Inc.,* 807 F.2d 1136, 1140 (3d Cir. 1986); *SK & F Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F.2d 1055, 1066–67 (3d Cir.1980).

### A. Success on the Merits

■ Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), provides that:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such description or representation.

To establish a violation of that section for trade dress infringement or unprivileged imitation of a product appearance, Second Earth must show (1) that the imitated feature is non-functional, (2) that the imitated feature has acquired "secondary meaning," and (3) that consumers are likely to confuse the source of plaintiff's product with that of defendant's product.[1] *American Home Products v. Barr Laboratories,* 834 F.2d 368, 370 (3d Cir.1987).

#### 1. *Functionality.*

■ The functionality doctrine as applied to trade dress infringement actions accommodates the twin purposes behind the Lanham Trademark Act. "It protects the manufacturer (and the consumer) from the copying of those features that signify a product's source (and quality) and encourages competition by preventing one manufacturer from acquiring a monopoly by attempting to trademark those features of a design essential to a successful product of that type." *Standard Terry Mills, Inc. v. Shen Mfg. Co.,* 803 F.2d 778, 780–81 (3d Cir.1986).

Products or features which have not qualified for patent protection but which are functional are in the public domain, and are fair game for imitation and copying. Our natural inclination to disapprove of such conduct must give way to the public policy of favoring competition, even by slavish copying, of products not entitled to federal patent protection.

*Keene Corp. v. Paraflex Industries,* 653 F.2d 822, 824 (3d Cir.1981).

Second Earth contends that the prismatic foil is non-functional, and that the idea of

**1.** The Pennsylvania common law relating to unfair competition is identical to the Lanham Trademark Act, 15 U.S.C. § 1125(a), except that the Lanham Trademark Act requires interstate commerce. *Mercury Foam Corp. v. L & N Sales & Marketing,* 625 F.Supp. 87, 91 n. 1 (E.D.Pa. 1985).

wrapping lighters in prismatic foil from The Diffraction Company is protectable. I disagree.

■ In the Third Circuit, a design is nonfunctional, and therefore entitled to trademark protection, if the design is not significantly related to the utilitarian function of the product, but is merely arbitrary. *Standard Terry Mills*, 803 F.2d at 781; *Paraflex Industries*, 653 F.2d at 825. Put another way, "[p]roof of nonfunctionality generally requires a showing that the element of the product serves no purpose other than identification." *Premo Pharmaceutical*, 625 F.2d at 1063.

Some Circuits have taken a broad view of functionality. The Ninth Circuit held that "[i]f the particular feature is an important ingredient in the commercial success of a product, the interest in free competition permits its imitation in the absence of a patent or copyright." *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir.1952).

The Third Circuit has a narrower view of functionality than the Ninth Circuit, requiring that the design feature be related to the utilitarian function of the product. *Paraflex Industries*, 653 F.2d at 825. "When the design itself is not significantly related to the utilitarian function of the product, but is merely arbitrary, then it is entitled to protection as a design trademark if it has acquired the distinctiveness necessary to achieve a secondary meaning." *Id.* This Circuit rejected the broader view because it provided a disincentive for the development of imaginative and attractive design. Under the broader view, "[t]he more appealing the design, the less protection it would receive." *Id.*

■ Second Earth asserts that the function of the wrapped lighters is essentially the same as the unwrapped lighters—that is, to ignite material, whether it be a cigarette, barbeque, or other substance. Therefore, Second Earth argues that the prismatic foil is nonfunctional when used to wrap a lighter because the prismatic foil does not aid in the utilitarian function of the lighter. I disagree.

The use of the prismatic foil on the lighters is functional for several reasons. First, the prismatic foil is directly related to the commercial success of the product and therefore is not used solely for the purpose of identification. The use of the prismatic foil allows a wrapped lighter to be sold for much more than the price of an unwrapped lighter, dramatically increasing the profit margin.[2] Second, Second Earth has stipulated that the use of the prismatic foil to wrap the lighters is not arbitrary. Third, the prismatic foil is related to the utilitarian function of the product. As Mr. Seiver testified, the foil causes the wrapped lighter to "light up." The foil takes white light and breaks it into its colored components, thus providing a function separate from igniting a flame.

The rationale and rule of *Paraflex Industries* protects imaginative and attractive design. Second Earth does not seek protection for a design, but rather seeks protection for the use of The Diffraction Company's prismatic foil to wrap disposable lighters and pens. Indeed, Second Earth has stipulated that it has employed over fifteen different Diffraction Company foil patterns on the wrapped lighters and pens. Therefore, a finding of functionality does not provide a disincentive for the development of imaginative and attractive design. *See Paraflex Industries*, 653 F.2d at 825. Furthermore, the prismatic foil and the foil designs were created by The Diffraction Company which was not named as a party to this action.

### 2. *Secondary Meaning*

Although a finding of functionality is by itself enough to find that there is not a reasonable probability of success on the merits, I also find that Second Earth did not establish secondary meaning or the likelihood of confusion at the point of sale.

■ "To establish secondary meaning, 'a manufacturer must show that, in the minds of the public, the primary significance of the product feature or term is to identify the source of the product rather than the

---

**2.** Exact cost figures were not set forth in the evidence.

product itself.' " *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 152 (3d Cir.1984), *quoting Inwood laboratories v. Ives laboratories,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982). In determining the existence of secondary meaning, the Court may consider factors such as length of use, buyer association, extent of sales and advertising, and the fact of copying. *Id.*

■ Second Earth has established only that it manufactured products wrapped in prismatic foil from The Diffraction Company for approximately one year before the Pennsylvania Defendants entered the market with a nearly identical product. Second Earth was never the sole manufacturer of lighters wrapped in prismatic foil, and the defendants copied only the functional features. The defendants did not copy the plaintiff's trade-names or service mark. The record is devoid of any evidence of advertising to the public or buyer association. The record has only minimal evidence of the extent of sales. As a whole, the record fails to support a finding of secondary meaning.

### 3. *Likelihood of Confusion*

■ To establish a likelihood of confusion, Second Earth must show that members of the consuming public are likely to confuse the source of the product bearing the imitated feature. *American Greetings,* 807 F.2d at 1141. Second Earth may not establish a likelihood of confusion solely by showing deliberate imitation. *American Home Products,* 834 F.2d at 371.

■ Second Earth has made no showing that the consuming public would be confused at the point of sale. When the lighters or pens are sold, they are in blister cards or in packages with header cards that clearly display the name of the product. There is a paucity of evidence that a concerned consumer would reasonably assume the various products, sold under different trade names, were manufactured and sold by the same company.

Because the wrapped lighters are nearly identical, and none of the lighters are individually labelled by the parties, the *possibility* of post sale consumer confusion exists. However, with a disposable novelty product which the parties have decided not to individually label, the Court does not consider the possibility of post sale confusion to be a significant factor.

Second Earth has failed to establish the elements of a trade dress infringement action; therefore, it has not established a reasonable probability of success on the merits.

### B. Irreparable Harm

In addition to showing a reasonable probability of success on the merits, Second Earth is required to show that it would be injured irreparably if the defendants were permitted to continue marketing wrapped pens and lighters pending a final hearing. *See Premo Pharmaceutical,* 625 F.2d at 1066.

■ Second Earth presented no credible evidence of irreparable harm pending a final hearing. Apparently, Second Earth places great reliance on a presumption of irreparable harm created by a showing of a likelihood of success on the merits. *Custom Decor, Inc. v. Nautical Crafts Inc.,* 502 F.Supp. 154, 157 (E.D.Pa.1980). However, even with such a presumption, the movant is still required to make some affirmative showing of irreparable injury. *Triangle Publications, Inc. v. Sports Eye, Inc.,* 415 F.Supp. 682, 684–85 (E.D.Pa. 1976).

In this case I find that Second Earth failed to establish irreparable harm pending a final hearing. Apart from failing to establish a presumption of irreparable injury by showing a reasonable probability of success on the merits, Second Earth failed to present any credible affirmative evidence of such injury.

### IV. DUE PROCESS

Second Earth requests that this Court preliminarily enjoin the defendants from selling lighters or pens wrapped in prismatic foil manufactured by The Diffraction Company. I note that this relief may conflict with the Constitutional constraints of

due process since The Diffraction Company is not a party to this action.

"The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976), *quoting Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). Granting the relief requested by Second Earth would prevent the defendants from buying prismatic foil from The Diffraction Company, while leaving them free to continue marketing lighters and pens wrapped in prismatic foil manufactured by another company. While injunctive relief may effect non-parties, due process questions are raised when the requested relief would, as in this case, impact most on a non-party.

For the foregoing reasons, Second Earth's Motion for a Preliminary Injunction is denied.

An appropriate Order follows.

### ORDER

AND NOW, to wit, this 6th day of March, 1989, upon consideration of the Motion of the plaintiffs, Second Earth Enterprises, Inc., and Mark C. Seiver, t/a Second Earth and Second Earth Enterprises, for a Preliminary Injunction, and the responses of defendants Allstar Product Marketing Company, Alan Dorfman, Unique World of Merchandise, Budd–Lin International, Inc., Innovative Touch, Inc. and Charles A. Budd, Jr., and after a hearing, IT IS ORDERED that the Motion of the plaintiffs for Preliminary Injunction is denied.