**SPECIALTY SURGICAL INSTRUMENTATION, INC., a Tennessee Corporation, Plaintiff,**

v.

**Burns P. PHILLIPS, and Boss Instruments Ltd., Inc., a Tennessee Corporation, Defendants.**

No. 3:93–0611.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 31, 1994.

James V. Doramus, Nashville, TN, for plaintiff.

Alan Mark Turk, Nashville, TN, for defendants.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above-styled case is Defendants' Motion for Partial Summary Judgment or in the Alternative Summary Judgment (Doc. No. 4).[1] The plaintiff, Specialty Surgical Instrumentation, Inc. ("SSI") alleges the following seven claims:[2] trademark and trade dress infringement, breach of duty of loyalty, breach of Loan and Sample Agreement, breach of employment agreement, breach of fiduciary obligations, breach of duty not to compete with principal concerning subject matter of agency, and misappropriation of confidential information and/or trade secrets. The first count relates to both Burns Phillips ("Phillips") and Boss Instruments, Ltd. ("Boss" or "Boss Instruments") and is the basis for this Court's jurisdiction. The last six counts relate only to the individual defendant, Phillips, and are pendent state law claims.

The defendants assert that there are no issues of material fact with respect to the plaintiff's trade dress infringement claim and that they are entitled to judgment as a matter of law. Hence, the defendants move this Court to dismiss with prejudice plaintiff's federal claim and dismiss without prejudice the pendent state law claims for lack of subject matter jurisdiction. For the reasons stated below, the Court grants the defendants' motion for partial summary judgment and dismisses with prejudice plaintiff's trade dress infringement claim and dismisses without prejudice the plaintiff's pendent state law claims.

## I. BACKGROUND

SSI alleges that Phillips and Boss Instruments have infringed on SSI's trade dress in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a). SSI asserts that the trade dress associated with its Ultra product line consists of its quality specialty instruments, its promotional materials, the diagonal design on its instrument packaging, the design and content of its package insert, sources from SSI's instruments and the marketing techniques for its instruments. Further, SSI maintains that such trade dress is inherently distinctive and, with the exception of the instruments, has acquired a secondary meaning in the marketplace for surgical instruments. SSI also contends that it owns the rights to use the terms, "Fine Touch" and "Art of Surgery." SSI maintains that the combination of these elements creates a look for the company's product that is protectable trade dress.

SSI and Boss are both Tennessee corporations and repackagers of surgical equipment selling substantially the same instruments to the same target market of customers. SSI is run by its president, Louis Wallace. Burns Phillips is the president of Boss. Neither SSI nor Boss manufacture equipment. Both companies repackage instruments that they import through U.S. suppliers and market the equipment to physicians and hospitals. SSI markets a line of high-quality surgical instruments forged from stainless steel under the name, "Ultra." SSI and Boss purchase surgical instruments primarily from Instrumed, International, Inc., the U.S. affiliate of Fetzer Micro Instruments.

---

1. By stipulation, the parties agreed that oral argument would be limited to the plaintiff's claim of trade dress infringement under the Lanham Act. Order, October 21, 1993.

2. The original Complaint alleged eight counts; however, the Court granted plaintiff's motion for voluntary dismissal of the copyright infringement claim. Order, October 8, 1993.

Both defendant and plaintiff market their instruments through trade shows and promotional catalogs and fliers. SSI's promotional materials were designed by Hermann Zimmerman ("Zimmermann"), a Nashville graphic artist. Boss's promotional materials were also designed by Zimmerman. SSI asserts that it owns the rights to use "Fine Touch" and "Art of Surgery," terms used by the company in its 1990 Supplemental Catalog. The terms were subsequently used in Boss catalogs.

SSI and Boss sell to the same end users. Both companies sell directly to hospitals and surgeons who generally purchase their surgical instruments through a designated surgical nurse or office manager. SSI relies primarily on in-house salesman to sell its product and also uses some distributors. Boss sells its products through distributors and independent representatives.

Phillips was employed with SSI from July, 1982 to July, 1992 and learned the surgical instruments business as a result of his employment with SSI. Phillips resigned from SSI on July 15, 1992 and his last day of employment was July 31, 1992. On August 4, 1992, Phillips incorporated Boss Instruments.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note.

An alleged factual dispute existing between the parties is not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

In considering plaintiff's allegations, the Court is mindful of the fact that the relevant review is not whether the evidence unmistakably favors plaintiff or defendants, but whether a fair-minded jury could return a verdict in plaintiff's favor based on the evidence presented. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is true, however, that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson,*

477 U.S. at 250, 106 S.Ct. at 2511. The court must determine that a reasonable jury would be unable to return a verdict for the non-moving party in order to enter summary judgment. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

## III. DISCUSSION

In construing the evidence in its most favorable light in favor of the party opposing the motion for summary judgment and against the movant, as required under *Bohn Aluminum & Brass Corp.*, 303 F.2d at 427, the Court finds that there does not exist a genuine issue of material fact with respect to the question of trade dress infringement.

■ Section 43(a) of the Lanham Act[3] creates a civil cause of action for trademark infringement as well as for infringement of the unregistered trade dress of a product. A competitor who "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or ... any misleading representation of fact, which—is likely to cause confusion ... as to the origin ... of his goods ... shall be liable in a civil action." Trademark Law Revision Act of 1988, Pub.L. No. 100–667, § 132, 102 Stat. 3946 (1988) (prior to 1992 amendment). Trade dress, as defined by the Lanham Act, "involves the total image of a product and 'may include features such as size, shape, color, color combinations, texture, and/or graphics.'" *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir.1989) (quoting *Rachel v. Banana Republic, Inc.* 831 F.2d 1503, 1506 (9th Cir. 1987)).

■ In order to defeat defendants' motion for summary judgment, SSI must demonstrate the existence of a genuine material factual dispute with respect to each of the following three elements of its Lanham Act claim: (i) that the Ultra trade dress is inher-ently distinctive or has acquired secondary meaning; (ii) that the Ultra trade dress sought to be protected is nonfunctional; and (iii) that Boss's trade dress presents a likelihood of confusion in the marketplace. *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. ——, ——, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992).

In *Two Pesos*, the plaintiff sought to protect the "look" of its restaurant which it characterized in part as: "[a] festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals." *Id.*, — U.S. at ——, 112 S.Ct. at 2755 (quoting *Taco Cabana International, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117 (5th Cir.1991)). The Supreme Court held that Taco Cabana had a protectable trade dress. *Id.*, — U.S. at ——, 112 S.Ct. at 2756. SSI contends that its trade dress is much more definite and entitled to protection. The Court concludes otherwise. Neither the individual elements of SSI's trade dress nor the overall look and feel of SSI's Ultra line is protectable.

### A. Inherent Distinctiveness and Secondary Meaning

■ If a mark is simply descriptive it is not inherently distinctive and consequently not entitled to Lanham Act protection, unless the mark has acquired secondary meaning. *Id.*, — U.S. at ——, 112 S.Ct. at 2757. First, SSI's trade dress is merely descriptive and not inherently distinctive. SSI has failed to demonstrate that its instruments, promotional materials, the diagonal pattern on its packaging, the design of its package insert, or its sources and marketing techniques are inherently distinctive. On the contrary, oral argument and the exhibits of both plaintiff and defendant revealed that these elements of SSI's trade dress are common in the surgical instruments market and employed by SSI's competitors. Neither SSI's instruments nor its advertising brochures are distinctive. The catalogs containing photographs of instruments sold by SSI are similar to those of other repackagers, including Boss, since the instruments photo-

---

**3.** The Lanham Act has been amended since the present suit was brought. *See* Trademark Remedy Clarification Act, Pub.L. No. 102–542, § 3(c), 106 Stat. 3567 (1992); 15 U.S.C. § 1125(a) (1993).

graphed and sold by SSI are, with the exception of the SSI logo, identical to those sold by other repackagers.

The design of SSI's packaging and package inserts are also not distinctive. The diagonal pattern is neither an SSI innovation nor one utilized exclusively by SSI. Rather the design predates SSI and is a popular one within the surgical instruments industry. As to the package inserts, those of SSI and other repackagers merely provide standard information regarding care and handling and all repackagers include similar inserts with their products. Finally, both SSI's suppliers and marketing avenues are utilized by competitors.

■ Further, SSI's trade dress has not acquired secondary meaning. "Trade dress of a product attains secondary meaning when the purchasing public 'associates' its design with a single producer rather than simply with the product itself." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir.1991) (citations omitted). In light of the fact that SSI, Boss, and other repackagers market virtually identical surgical instruments, no secondary meaning or special recognition from merely looking at the product can be created. The products are distinguishable only by the appearance of the particular repackager's logo on the instrument. Hence, the article is associated with its source not by its look, but only by the presence of the name of the source on the instrument. SSI's promotional materials also fail to create any secondary meaning in the marketplace. The advertising brochures used by SSI are similar to those used by other surgical instrument companies. Gray backgrounds, photographs, line drawings, and slanted placement of the products on the pages are not unique to SSI and hence cannot create any secondary meaning within the marketplace. These features are descriptive and do not identify a particular source for specialty surgical instruments.

### B. Functionality

■ Second, the trade dress sought to be protected is functional. *Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1246 (6th Cir.1991), *cert.*

*denied,* —— U.S. ——, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992), held that:

> Trademark law does not protect the functional features of products because such protection would provide a perpetual monopoly of features which could not be patented. *Keene Corp. v. Paraflex Indus., Inc.*, 653 F.2d 822, 825 (3d Cir.1981). A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982).

SSI asserts that the use of the color gray in its promotional materials is protectable trade dress. The Court finds otherwise because SSI's use of gray is functional.

In the case *In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116 (Fed.Cir.1985), the court permitted registration of the color pink as a trademark for Owens–Corning's residential insulation. The court reasoned that because the color pink served no functional purpose and the range of available colors to competitors would not be limited protection was appropriate. *Id.* at 1122. The case at hand is distinguishable. SSI's use of the color gray is primarily functional. The use of the color gray serves to make SSI's catalogs more effective as the color gray highlights the design of the instruments in SSI's catalogs. The utilitarian nature of the color gray precludes protecting it as trade dress. *Id.* at 1120–21.

■ Despite the fact that the *Owens–Corning* court ruled in the manufacturer's favor, the court specifically recognized the color-depletion theory as an argument against providing trademark protection to color in certain cases. *Id.* at 1120. The color-depletion theory states that because there are a limited numbers of color in the palette it is against public policy to permit trademark protection of color as this would further deplete colors available to competitors. *Id.* Applying this theory to the present case, the Court rules that protection is unavailable for SSI's use of the color gray because such protection would deprive com-

petitors of the reasonable right to use it. *Id.* at 1120. Although the promotional materials of SSI's Ultra product line make more extensive use of the color gray than those of its competitors, the fact that the gray background is employed to varying degrees by not only Boss, but other repackagers as well, reveals the competitive need for the color gray in the surgical instruments industry. When there is such a competitive need for a color, trade dress protection is precluded. *Id.*

The SSI name and logo placed diagonally on its plastic bags is also functional because the design reduces waste and thereby reduces cost. Several surgical instrument companies use a continuous pattern on their plastic bags similar to that utilized by SSI and Boss because the repetitive pattern reduces waste and costs. Hence, this element of SSI's trade dress is also not entitled to protection.

### C. Likelihood of Confusion

Third, SSI has not established that there exists a genuine issue of material fact with regard to whether Boss's trade dress is likely to cause confusion. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir.1991) held that: "[i]n assessing the likelihood of confusion, a court's concern is 'the performance of the marks in the commercial context.'" (quoting *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1266 (6th Cir. 1985)). The Sixth Circuit Court of Appeals has identified several factors which must be examined to determine the probability of confusion. The factors are: (i) the strength of the plaintiff's mark; (ii) relatedness of the services; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) likely degree of purchaser care and sophistication; (vii) intent of the defendant in selecting the mark; and (viii) likelihood of expansion of the product lines using the marks. *Id.* (citations omitted). The factors do not present a precise test, rather the factors are interrelated and are to serve as a guide to the Court in analyzing specific cases. *Id.* at 1107.

### (i) Strength of the Plaintiff's Mark

Trade dress is considered "strong" if the relevant consumers accept it "as the hallmark of a particular source." *Id.* (quoting *Shoney's*, 759 F.2d at 1264). In arguing that a genuine material dispute exists with respect to the strength of SSI's trade dress, SSI concedes that its trade dress is not as strong a mark as, for instance, McDonald's "golden arches." The Court concludes that no genuine issue of fact exists. SSI's trade dress is not only not as strong a mark as the "golden arches" of McDonald's, it is not inherently distinctive. The combination of elements comprising SSI's trade dress are merely elements employed by virtually all players in the surgical equipment market. SSI has not created an overall impression or a consistent or unique look and feel and hence, plaintiff's employment of these elements has not resulted in a strong trade dress.

### (ii) Relatedness of the Products of SSI and Boss

Relatedness of products is gauged by the intensity of competition between the providers. *Id.* at 1108. For purposes of this analysis, "relatedness exists where goods ... are similar enough that a consumer could 'easily assume' that they were offered by the same source." *Id.*, 931 F.2d at 1109 (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988)).

SSI and Boss are direct competitors. Because SSI and Boss are direct competitors confusion between their products is more likely than if their products were not competitive. *See id.* at 1108. It is undisputed that the products of the plaintiff and the defendant not only coexist and compete within the same market, their products are virtually identical. Hence, relatedness exists between the products of SSI and Boss, just as relatedness would exist between the products of SSI and any repackager of specialty surgical instruments.

### (iii) Similarity of the Marks

The Court must analyze the similarity of the marks in the context of the

marketplace and consider "the overall impression of the mark, not an individual feature." *Id.* at 1109. Some aspects of Boss's trade dress are more similar to the Ultra trade dress than others. Boss's promotional materials, which are characterized by shading and diagonal layout, are quite similar to the Ultra promotional materials. Less similar is Boss's packaging as compared with SSI's packaging. While both parties employ a diagonal pattern, Boss's packaging includes the company's name and the term, "The Art of Surgery," and slants downward and SSI's packaging only includes the company name and slants upward. The remaining elements of Boss's trade dress, the content and design of the package insert cards, the product lines, and the sales techniques are similar to SSI's because these elements are descriptive and common within the industry.

The instruments, promotional materials, packaging, and package inserts which comprise the plaintiff's trade dress have its name and company logo affixed. Likewise, these components of the defendants' trade dress have its name affixed. The fact that both SSI and Boss clearly identify their products and product information with their respective brand names reduces the likelihood of confusion in the market place for specialty surgical instruments. "Clear and prominent display of the name of the true manufacturer, while not determinative, can substantially mitigate any confusion caused by ... similarities in the two markings of the two products." *Purolator, Inc. v. EFRA Distribs., Inc.,* 687 F.2d 554, 561 (1st Cir.1982). The Court recognizes that the trade dress of Boss is similar to that of SSI; however, the probability of confusion as a result of this similarity is decreased due to the presence of the respective company names on their packaging, advertising materials, and products.

#### (iv) Evidence of Actual Confusion

SSI relies heavily upon the affidavits of Timothy Park, Regina Gale Owens Cates, and Beverly J. Graham to argue that SSI and Boss promotional materials are confusingly similar. Park Aff. ¶ 12, Cates Aff. ¶ 9, Graham Aff. ¶ 9. Mr. Park testified that he inadvertently approved a purchase order for a Boss surgical instrument, which he initially believed to be a purchase order for an SSI instrument. Park Aff. ¶ 6. Such testimony may be persuasive on this point, but not necessarily. In the Sixth Circuit the weight to be given to such evidence is as follows:

> Where the parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination. Indeed, the existence of only a handful of instances of actual confusion after a significant time or a significant degree of concurrent sales under the respective marks may even lead to an inference that no likelihood of confusion exists. (citations omitted).

*Homeowners,* 931 F.2d at 1110.

The Court finds that plaintiff's affidavits are insufficient to raise a genuine question of material fact so as to preclude summary judgment. The affidavits presented by SSI merely demonstrate that an alleged factual dispute exists. For summary judgment purposes the dispute must be material and genuine. Plaintiff's affidavits do not meet this burden as they are insufficient to show that the company could prevail on this claim if allowed to proceed to a jury.

#### (v) Marketing Channels Used

SSI and Boss employ similar marketing methods to promote their products. Further, both companies sell to the same target market. SSI relies primarily on in-house salesmen. Boss sells its product through distributors or independent representatives. SSI and Boss use advertising material to market their products. Both companies sell their instruments directly to physicians and hospitals.

The Court finds that the marketing channels used by the parties are similar and such similarity increases the possibility of confusion between the SSI and Boss products.

#### (vi) Likely Degree of Purchaser Care and Sophistication

SSI and Boss market their products to a sophisticated customer base—health care professionals responsible for purchasing surgical equipment. The Court finds that a

reasonable consumer of surgical instruments would not be likely to be confused by any alleged similarity between SSI's trade dress and Boss's trade dress.

### (vii) Intent of the Defendant in Selecting the Mark

 "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Id.* at 1111 (citing *Wynn Oil*, 839 F.2d at 1189). In creating its promotional materials, Boss hired the same graphics designer that SSI employed to develop its promotional materials. Boss also now incorporates the phrases, "Fine Touch" and "The Art of Surgery" throughout its promotional literature. SSI previously used these terms in a 1990 supplemental catalog for Ultra ophthalmic instruments.

There are some similarities between Boss's trade dress and that of SSI; however, SSI has not demonstrated that the defendants chose these elements of its trade dress to cause confusion. In fact, because Boss has utilized these phrases consistently throughout its marketing materials including its catalogs and packaging, Boss has attempted to distinguish its trade dress from that of SSI.

### (viii) Likelihood of Expansion of the Product Lines

 *Homeowner* examines the circumstance in which the products are not competitive or closely related reasoning that a " 'strong possibility' that either party will expand his business to compete with the other ... will weigh in favor of finding that the present use is infringing." *Id.*, 931 F.2d at 1112 (citing Restatement of Torts § 731(b) & cmt. c (1938)). By extension, the Court will apply this analysis in the present case in which the products are competitive and closely related.

The Restatement of Torts explains that trade dress protection is limited to those cases in which there is a probability of confusion of prospective purchasers and states the relevant test as follows: "The issue in each case is whether the goods ... of the actor and of the other are sufficiently related so that the alleged infringement would subject the good-will and reputation of the other's trade-mark or trade name to the hazards of the actor's business." Restatement of Torts, § 730 cmt. b (1938).

SSI asserts that it is likely to expand the Ultra line. Boss has not indicated its intention to expand its product lines. Presently, SSI and Boss compete in the same market. Whether Boss will expand its product line in a way similar to SSI remains unclear. Assuming that Boss expands its product line, the Court does not find such expansion indicative of infringement because the likelihood of consumer confusion is not significant.

Based on the analysis of the above factors, the Court rules that the relevant consumers are unlikely to confuse SSI's product with Boss's product. Notwithstanding the relatedness of the products, some similarities of the marks, and the similarities of the marketing channels used, these factors are outweighed by the weakness of plaintiff's mark, the high degree of purchaser care and sophistication, and the presence of the logos of both Boss and SSI on the respective elements of their trade dress. Further, plaintiff's evidence of actual confusion is not of substantial weight in this analysis and SSI has failed to demonstrate that Boss intended to cause confusion through its choice of trade dress.

## IV. CONCLUSION

The Court finds that SSI has not met its burden of presenting a genuine issue of material fact with respect to the three elements required under the Lanham Act. The Court concludes that SSI's trade dress is ineligible for protection under the Lanham Act and this claim does not survive summary judgment.

In entering a judgment for defendants Phillips and Boss Instruments, the Court finds that a reasonable jury would be unable to return a verdict for the non-moving party. Because the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d at 1478.

For the reasons set forth above, the Court grants the defendants' motion for partial summary judgment and dismisses with prejudice plaintiff's trade dress infringement claim and dismisses without prejudice the plaintiff's pendent state law claims. An Order consistent with the foregoing reasoning will be entered contemporaneously with this Memorandum.

## ORDER

Pending before the Court in the above-styled case is Defendants' Motion for Partial Summary Judgment or in the Alternative Summary Judgment (Doc. No. 4).

In accordance with the reasoning set forth in the contemporaneously entered Memorandum, the Court hereby GRANTS the Motion, and DISMISSES with prejudice plaintiff's trade dress infringement claim and DISMISSES without prejudice the plaintiff's pendent state law claims.