SYLVANIA ELECTRIC PRODUCTS,
Inc., Appellant,

v.

DURA ELECTRIC LAMP COMPANY,
Inc., and Michael Portnow.

No. 12089.

United States Court of Appeals
Third Circuit.

Argued May 17, 1957.

Decided Aug. 27, 1957.

Leslie D. Taggart, New York City (Pitney, Hardin & Ward, Newark, N. J., Robert C. Nicander, New York City, Howard M. Cohen, New York City, Arthur J. Martin, Jr., Newark, N. J., on the brief), for plaintiff-appellant.

Alex Friedman, New York City (Harry B. Rook, Newark, N. J., Mock & Blum, New York City, on the brief), for defendants-appellees.

Before STALEY and HASTIE, Circuit Judges, and SORG, District Judge.

STALEY, Circuit Judge.

The argument is advanced upon this appeal that a certain symbol descriptive of a feature of a product may be registered as a trade-mark notwithstanding the fact that the feature admittedly performs a utilitarian function.

Sylvania Electric Products, Inc., brought an action in the district court under the Lanham Trade-Mark Act, 15 U.S.C.A. § 1051 et seq., for alleged trade-mark infringement, and for injunctive relief against unfair competition. The complaint prayed relief in the form of accounting, treble damages pursuant to 15 U.S.C. § 1117, delivery up for destruction of the alleged offending products, and a temporary and permanent injunction to restrain defendants from using the features to which plaintiff claims exclusive right.

From the year 1936, plaintiff's predecessor began the manufacture of photo-graphic flash-bulbs with the air-leakage indicator which is the subject of the dispute in this case. This indicator is known as the "blue dot," and is composed of cobalto-cobalti cyanide, which is applied in an appropriate suspension on the top of the inside of the glass globe, opposite the base. It takes the form of a circular dot about one-eighth of an inch in diameter. Upon its application, this cobalt salt possesses a pink color. The vehicle in which the salt is suspended is evaporated during the course of manufacture when the atmosphere is exhausted from the globe and the globe is sealed to the stem. The cobalt salt applied to the inside of the flash-bulb changes to blue when the exhaustion of atmospheric air is complete. If the bulb is defective so as to permit air leakage, the spot remains pink. The color of the spot serves a dual purpose; it readily indicates to the producer those bulbs which were defective in the course of manufacture; it indicates also to the consumer those bulbs which later developed air leakage and thus were unsuitable for use at that time.

Defendant Dura Electric Lamp Co., Inc., began in 1950 to sell photographic flash-bulbs with a blue dot similar in all material respects to the blue dot used by Sylvania. Although plaintiff Sylvania had registered the blue dot as a trade-mark with the patent office in 1951, defendant Dura had never claimed the blue dot as a trade-mark. On July 11, 1952, approximately two years prior to the commencement of this suit by Sylvania, Dura had filed a petition in the United States Patent Office against Sylvania for the cancellation of Sylvania's registration of the blue dot, alleging that it was functional in character and therefore not the proper subject of trade-mark registration. The cancellation proceedings were suspended upon Sylvania's motion, pending the final disposition of the present suit.

The district court in this case found that Sylvania's use of the blue dot on its photographic flash-bulb was functional in shape, color, and position, and as

such, could not be the subject of a trademark registration; that the blue dot acquired no secondary meaning; and that Dura did not engage in unfair competition. D.C.N.J.1956, 144 F.Supp. 112. From the judgment of the district court dismissing the complaint, plaintiff Sylvania has taken this appeal.

■■ A determination of the validity of the "blue dot" trade-mark is, of course, prerequisite to any discussion of trade-mark infringement. The registration of a trade-mark by the Patent Office furnishes an evidentiary presumption of validity. A registered trade-mark may be cancelled by direct attack as prescribed by statute. However, it may also be collaterally attacked in any action where the validity of the mark is properly in issue. James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F. 2d 6, 9, certiorari denied, 1942, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541. Here Dura attacks the validity of Sylvania's registration of the blue dot with the argument that since it is functional it is not registrable. The district court agreed with Dura's contention and so do we.

■ Appellant frankly admits that the blue dot on its bulb is functional. Indeed, from the record, the finding of the district court to this effect is inescapable. Although the issue of whether an identifying mark which performs a function is registrable as a trade-mark is not new, appellant has been unable to direct our attention to any case or authority which permits such registration and our independent research has uncovered none. The general rule inhibiting the registration of functional marks is given in the Restatement of the Law of Torts, § 715 (1938):

"A trade-mark is any mark, word, letter, number, design, picture or combination thereof in any form of arrangement, which * * * (c) is not * * * a designation descriptive of the goods or of their quality, ingredients, properties or functions * * *."

The purpose of this rule is obviously to prevent the grant of perpetual monopoly by the issuance of a trade-mark in the situation where a patent has either expired, or for one reason or another, cannot be granted. See In re Walker-Gordon Laboratory Co., 1931, 53 F.2d 548, 19 C.C.P.A. Patents 749.

Case authority uniformly denies registration as a trade-mark to a functional feature of an article.[1] In re Winchester Repeating Arms Co., 1934, 69 F.2d 567, 21 C.C.P.A. Patents 1016; In re Walker-Gordon Laboratory Co., supra; Sparklets Corp. v. Walker Kidde Sales Co., 1939, 104 F.2d 396, 26 C.C.P. A. Patents, 1342; In re Forged Steel Products Co., 1941, 121 F.2d 492, 28 C.C.P.A. Patents, 1269.

Reliance of appellant is placed principally upon Capewell Horse Nail Co. v. Mooney, 2 Cir., 1909, 172 F. 826. In that case the mark in question consisted of a symbol in the form of small checks on the head of horseshoe nails. In upholding the validity of the trade-mark in that infringement suit, the court expressed doubt as to whether the mark performed any function, but made it quite clear that it recognized the rule that functionality prevents registration when it expressed the issue in the following manner:

"Whether the defendant used the check mark in manufacturing horseshoe nails, as a gripping sur-

---

1. "The substance or any useful part or feature of the article itself * * * cannot be appropriated as a trade-mark, since otherwise all substances and methods useful in manufacturing and packing goods for the market would soon be monopolized without the formality of obtaining a patent even in cases where a patent could be obtained. However, a trade-mark may be an integral part of the product *if it is of no added functional use or value.*" (Emphasis supplied.) 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 49, (1954).

face or for the purpose of imitating the complainant's mark and manufacture so as to pass off his nails as those of the complainant." 172 F. at page 828.

■ The alleged trade-mark under consideration would be invalid even if the only objection raised against it were that it performs a function apart from any identifying characteristic. However, the Lanham Trade-Mark Act, 15 U.S.C.A. § 1052, spells out an independently sufficient reason to deny registration to Sylvania's symbol of the blue dot. That section recites that no distinguishing mark shall be refused registration unless it:

"(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive * * * of them * * *."

The specific prohibition of the act denying registration to descriptive marks precludes the valid registration of the blue dot, whether it takes the form of a symbol, as it did here, or whether the mark be composed of the words "blue dot." It is of no significance that the alleged trade-mark may not be descriptive of the entire article, but rather only of the blue dot feature. Perhaps the closest case in point is Goodyear Tire & Rubber Co. v. Robertson, 4 Cir., 1928, 25 F.2d 833. There a bill in equity was filed pursuant to statute to require the Commissioner of Patents to register as a trade-mark a diamond-shaped symbol representing the impression used by complainant on the tread of the tires it manufactured. The court upheld the denial of registration of the mark, since although it might have indicated the source of origin, it did perform a utilitarian function. Further, the court held that the mark was descriptive of the goods in prohibition of the act, notwithstanding the fact that appellant had argued that the symbol did not describe the tire itself, but rather only part of the tread. And if the alleged mark were the words "diamond-shaped tread," reg-

istration would certainly be denied as descriptive of the goods. Application to register the symbol itself stands on no better ground. In summation, the court said, at page 834:

"* * * The prohibition of section 5 of the Trade-Mark Act against the registration of descriptive words is unqualified, and does not authorize their registration, if adopted to indicate origin, or if publicly used for any particular period of time. No matter how long the use continues, the mark will never become a technical trade-mark. * * * Here we have an effort to register an alleged trade-mark, consisting of something which is a mechanically functional feature of an automobile tire, and not registerable at all, and is descriptive of the particular type of tire, the registration of which is expressly inhibited by the provisions of section 5."

■ The registration of the blue dot symbol as a trade-mark was invalid because of its functional feature and because it was descriptive of the goods within the prohibition of the Lanham Trade-Mark Act. It follows that there can be no trade-mark infringement.

Apart from the issue of trade-mark infringement, appellant charges Dura with unfair competition in marketing flash-bulbs alleged to be deceptively similar to those of appellant.

The salient requirement of an action for unfair competition is that one manufacturer is selling his goods in such a manner that he creates the impression on the minds of prospective purchasers that the articles are the products of a rival manufacturer. It must further be shown that consumers purchased the article in question because they were concerned with the origin, and not merely because of certain attractive features. Gum, Inc., v. Gumakers of America, Inc., 3 Cir., 1943, 136 F.2d 957, 959.

■ Whatever patent protection the blue dot might have had has expired.[2]

---

2. N. V. Philips Gloeilampenfabrieken, a Dutch corporation, was issued a British patent on October 3, 1935, for its invention of the blue dot. A United States

It is not registrable as a trade-mark. As a manufacturing method or process, the blue dot is in the public domain. Dura may imitate this functional feature in every characteristic, so long as it takes reasonable steps to inform prospective purchasers that the bulbs it sells are not of the manufacture of Sylvania. Restatement, Torts, § 741 (1938); Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., 3 Cir., 202 F.2d 172, certiorari denied, 1953, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346.

The district court found that Dura was not engaging in unfair competition with Sylvania because:

"* * * (1) the blue dot has not acquired generally in the market a special significance identifying Sylvania's goods, and (2) the imitation is not likely to cause prospective purchasers to regard Dura's goods as those of Sylvania, and (3) the imitated feature is functional, and (4) the evidence clearly shows that defendants have taken reasonable steps to inform prospective purchasers that the goods which Dura markets are not those of Sylvania by means of the shape of the globe of Dura's bulb and the prominent display of Dura's name upon the racks, cartons and sleeves by means of which its goods are marketed. * * *" 144 F.Supp. at page 131. The court further found that "At most the evidence shows that many purchasers purchase Sylvania bulbs because of the advantage afforded by the blue dot thereon." The district court thus found that the blue dot had not acquired a secondary

meaning identifying it with Sylvania. If this be the case, any charge of unfair competition must fail. Gum, Inc., v. Gumakers of America, Inc., 136 F.2d at page 959. But even assuming that the blue dot had acquired a secondary meaning, all that the law demands of Dura is that it take reasonable steps not to deceive prospective purchasers into believing that the bulbs it sells were made by Sylvania. The district court found that Dura had taken reasonable steps to avoid confusion of source, and there is substantial evidence to support this finding. See Restatement, Torts, § 741, comment j (1938). Appellant urges that Dura could have varied the color or positioning of the dot indicating air leakage, and thus could have more reasonably avoided confusion. But the issue does not require second-guessing as to what steps could have been taken, but rather a determination of whether the steps actually taken were reasonable and sufficient. Plaintiffs in unfair competition cases are always able to conceive of other courses which defendants might have pursued. See Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., 202 F.2d at pages 175–176, note 10. Here, even assuming secondary meaning, the steps taken by Dura to differentiate its product from Sylvania were reasonable. See Vaughan Novelty Mfg. Co. v. G. G. Greene Mfg. Corp., supra, 202 F.2d at page 176.

In the absence of trade-mark infringement and unfair competition, the relief sought by appellant was properly denied.

The judgment of the district court will be affirmed.

Patent No. 1,989,572 was issued to the Dutch corporation for the blue dot. This patent expired on January 29, 1952. Appellant's predecessor manufactured flash-bulbs with the blue dot under license from the patentee Philips. Since 1946, Sylvania undertook by advertisement to condition the public to identify its bulb by the blue dot, obviously seeking to attribute to the symbol a secondary meaning. On October 30, 1951, about three months before the patent for the blue dot expired, Sylvania had the blue dot symbol registered as a trade-mark. It was to prevent just such a situation that the rule was expounded denying registration to functional marks—in other words, Sylvania would have been granted a monopoly by trade-mark to continue exclusive use of a functional element the patent for which had expired.