DENTSPLY INTERNATIONAL, INC. and Dentsply Research and Development Corp., Plaintiffs,

v.

KERR MANUFACTURING COMPANY, Defendant.

CENTRIX, INC. and Dr. William B. Dragan, Plaintiffs,

v.

DENTSPLY INTERNATIONAL, INC., L.D. Caulk Division of Dentsply International, Inc., and Dentsply Research and Development Corp., Defendants.

Civ. A. Nos. 89–167–JJF, 89–507–JJF.

United States District Court, D. Delaware.

Jan. 12, 1990.

Henry N. Herndon, Jr. of Morris James Hitchens & Williams, Wilmington, Del., Albert W. Preston, Jr., and Dianne B. Elderkin of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., and Edward J. Hanson, Jr. of Dentsply Intern., Inc., York, Pa., for Dentsply.

Robert W. Whetzel of Richards Layton & Finger, Wilmington, Del., William H. Levit, Jr., Michael B. Apfeld and John L. Beard of Godfrey & Kahn, S.C., Milwaukee, Wis., for Kerr Mfg. Co.

William J. Wier, Jr. of Wier & Halberstadt, Wilmington, Del., for Centrix, Inc. and Dr. William B. Dragan.

## I. FACTS

FARNAN, District Judge.

The plaintiffs, Dentsply International Inc. and Dentsply Research and Development Corp. ("Dentsply" or the "Dentsply plaintiffs"), filed this action on April 7, 1989, against Sybron Corporation ("Sybron") seeking redress for alleged trademark, trade dress and patent infringement (D.I. 1). After the Court denied a temporary restraining order filed by the plaintiffs, the plaintiffs added as a party Kerr Manufacturing Co. ("Kerr"), a competitor of Dentsply in the market for consumable dental products, filed an Amended Complaint and stipulated to the dismissal of Sybron from the case (D.I. 23) The crux of the dispute in this case centers on "dental restorative material" inserted by the plaintiffs and the defendant into single dose ampules. Kerr's ampule is known as Herculite XR Unidose System ("XR Unidose") and the Dentsply plaintiffs' ampule is called COMPULES.

In Count I of the Amended Complaint Dentsply alleges trademark infringement against Kerr's ampule under 15 U.S.C. § 1114(1). By this count Dentsply contends it is entitled to trademark protection by reason of the recording of the two dimensional outline of the Dentsply ampule on the Supplemental Register in the United States Patent and Trademark Office ("PTO"). In Count II Dentsply alleges trademark infringement against Kerr under the 15 U.S.C. § 1114(1) contending an alleged infringement of the word trademark COMPULES. Count III alleges Kerr has violated 15 U.S.C. § 1125(a), popularly known as Section 43(a) of the Lanham Act, by Kerr's XR Unidose's alleged limitation of Dentsply's COMPULES' trade dress, which includes the ampule's outline, color and name. Count IV alleges similar claims of unfair competition and trademark infringement against Kerr under Delaware common law. Finally, a utility patent issued by the PTO to Dentsply Research and Development Corp. for the single dose ampule at issue in this case, identified as

United States Patent 4,391,590 ("the '590 patent"), provides the predicate for Count V, a charge of patent infringement by Kerr's ampule.

On May 1, 1989, Kerr filed its Answer to the Amended Complaint, wherein it claimed as an affirmative defense that:

Plaintiffs have no trademark rights or trade dress rights in the configuration of Plaintiffs' ampule or in the colors used for the ampules or their caps because, without limitation, (a) no such rights are granted by the registration on the Supplemental Register, (b) Plaintiffs have failed to and cannot establish that said ampule or the colors function as a trademark or are capable of distinguishing Plaintiffs' product or are recognized as indicators of origin by relevant consumers, (c) the configuration and design and the colors and the color combinations of Plaintiffs' ampule are functional, (d) Plaintiffs' ampule design and the colors and the color combinations are not distinctive and Plaintiffs have failed to and cannot establish secondary meaning, (e) the grant of any trademark rights in Plaintiffs' ampule design or product configuration would be inconsistent with (i) the Act of Congress governing patents, 35 U.S.C. §§ 171–173, and would have a chilling effect on creativity and invention of products and (ii) the United States Constitution, Article I, Section 8, including without limitation, the limited times proviso relating to patents.

(D.I. 26). These general averments reappeared in more specific form when Kerr moved for partial summary judgment on all allegations in Count I (the federal trademark claim), Count III (the federal unfair competition claim) and Count IV (the unfair competition and trademark infringement claim under Delaware common law), except those allegations relating to the word trademark COMPULES (D.I. 37). In its opening brief Kerr contends that Dentsply's ampule is "functional" and therefore not entitled to trademark or trade dress protection (D.I. 38). In support of its contention Kerr relies on the '590 patent, Dentsply's advertisements for the product and the testimony of the patent's inventor,

Emery Dougherty, in an earlier-filed action in this Court, *Dragan v. L.D. Caulk Co.,* 625 F.Supp. 690 (1985) (consolidated). Dentsply's answering brief argued that the analysis of functionality is inappropriate on an application for summary judgment on the record presently before the Court (D.I. 44). Kerr has filed its reply brief (D.I. 47), oral argument has been held, and the motion is ripe for a decision.

## II. DISCUSSION

■ To understand the analysis necessary to determine whether Dentsply's ampule is "functional" as alleged by Kerr, a brief review of the purposes of trademark registration and trade dress law is appropriate. 15 U.S.C. § 1127 defines a trademark as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant *to identify and distinguish his goods,* including a unique product, from those manufactured or sold by others...." 15 U.S.C. § 1127 (emphasis added). As the definition indicates, trademark registration law provides protection to those aspects of a product which identify to the consumer the product as one supplied by a particular manufacturer. *See United States Golf Association v. St. Andrews Systems, Data–Max, Inc.,* 749 F.2d 1028, 1033 (3d Cir.1984) ("[T]he value of such features in identifying the source of the goods or services outweighs the social interest in allowing competitors to copy them."). Consequently, those features of a product which may act as an identifier of origin, such as the designs of the ampules at issue here, may be given trademark status by the Patent and Trademark Office ("PTO"). *See In re Morton–Norwich Products, Inc.,* 671 F.2d 1332, 1336 (C.C.P.A.1982). The PTO may grant a claimed trademark protected status by allowing the claimed trademark to be registered on the Principal Register or on the Supplemental Register. 15 U.S.C. §§ 1051 and 1091.

■ 15 U.S.C. § 1114(1) provides a civil remedy to a manufacturer which has been permitted by the PTO to register its trademark pursuant to federal law. Subsections

1114(1)(a) and (b) make liable any person whose product imitates another's trademark in such a way that the imitation is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) and (b). Nevertheless, an imitation of a feature or design which is "functional", despite that functional aspect's ability to act as an identifier, will not provide the basis for relief under § 1114(1). *See United States Golf Association*, 749 F.2d at 1032. This is so because the law seeks to advance utilitarian inventions and thus allows competitors to copy functional features freely. *See Standard Terry Mills, Inc. v. Shen Mfg. Co.*, 803 F.2d 778, 780–781 (3d Cir.1986).

■ Section 43(a) of the Lanham Act creates an independent basis of protection from copying for a product's identifiable features regardless of whether the product's claimed trademark has been registered pursuant to the aforementioned federal status. 15 U.S.C. § 1125(a). Section 43(a) establishes a right of action for unfair competition, which includes a right of action to protect against "unprivileged imitation." *SK & F, Co. v. Premo Pharmaceutical Laboratories, Inc.*, 625 F.2d 1055, 1065 (3d Cir.1980). Unprivileged imitation includes copying a product's "trade dress", which has been defined by the Third Circuit Court of Appeals as "the appearance of the [product] itself as well as its packaging[.]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 80 n. 2 (3d Cir.1982). "The salient requirement of an action for unfair competition is that one manufacturer is selling his goods in such a manner that he creates the impression on the minds of prospective purchasers that the articles are the products of a rival manufacturer." *Sylvania Electric Products, Inc. v. Dura Electric Lamp Co.*, 247 F.2d 730, 733 (3d Cir.1957). The law of trade dress is, therefore, concerned, like the law of registered trademarks, with the protection of those aspects of a product which indicate origin. Similarly, trade dress law is not designed to protect functional features; however, trade dress law tapers the functionality analysis to trade dress law's protection for a product's overall appearance.

■ In the Third Circuit, the party asserting the trademark protection has the burden of proving that a claimed trademark or trade dress is nonfunctional. *American Home Products Corp. v. Barr Laboratories, Inc.*, 834 F.2d 368, 370 (3d Cir.1987). In the case of a registered trademark on a product's configuration, the party seeking protection has to prove that each aspect of its design is nonfunctional before the entire design can be given protected status. *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co.*, 870 F.2d 512, 516 (9th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989). Thus, "before an overall product configuration can be recognized as a trademark, the *entire* design must be [nonfunctional]" (emphasis in original). *Textron, Inc. v. U.S. International Trade Commission*, 753 F.2d 1019, 1025 (Fed.Cir.1985). However, protection may be given part of the design if that part is nonfunctional. *Id.*

■ In the situation of a party seeking trade dress protection, the law particularizes the party's burden of proof to the protection afforded the product's "total package". *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 153 (3d Cir.1984). Thus, functionality analysis as it pertains to trade dress does not break a design into its composite parts but instead examines the product's overall appearance. A product may have trade dress protection even if some of its composite parts are functional, provided that the overall arrangement of the features are nonfunctional. *American Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1143 (3d Cir.1986) ("[O]ne may have a protectable interest in a combination of features or elements that includes one or more functional features."). In this regard, the protection is for the way in which the functional feature contributes to the overall nonfunctional dress. *See, e.g., Stormy Clime, Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977 (2d Cir.1987).

In this case, Dentsply contends it is entitled to trademark protection under two theories. First, Dentsply claims protection for

the outline of its ampule shown on the Supplemental Register, a copy of which is attached to this Opinion as Exhibit A. The outline of the Dentsply ampule results from the design of the following parts:

1. The cylindrical body;
2. The circular flange at one end;
3. The hemispherical nipple at the other end;
4. The uniform dimensions;
5. The angled discharge nipple end;
6. The cap over the discharge nipple.

Secondly, Dentsply asserts a trade dress claim, which rather than focusing only on the outline, adds to the analysis of functionality consideration of those things which allegedly create the ampule's appearance, including the arrangement of the parts, the material from which the ampule is molded and the color of the cap over the discharge nipple. As stated previously, Defendant Kerr contends that neither the registered trademark or trade dress theory entitles Dentsply to protection because the configuration of the Dentsply ampule is "functional".

The Court's task then is to determine 1) whether summary judgment is appropriate on the present record; and 2) if summary judgment is appropriate, has Kerr demonstrated by application of the "functionality analysis" that Dentsply's ampule is functional.

## A. *The Summary Judgment Standard.*

Federal Rule of Civil Procedure 56 permits summary judgment if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Third Circuit Court of Appeals recently noted, "[t]he standard for this determination is more easily stated than applied[.]" *Williams v. Borough of West Chester, Pennsylvania,* 891 F.2d 458, 459 (3d Cir.1989) (available on LEXIS, Genfed library, USAPP file).

> [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party....

> ....

> [The summary judgment standard] mirrors the standard for a directed verdict ... which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

> If reasonable minds could differ as to the import of the evidence ... a verdict should be directed....

> In essence ... the inquiry under each [standard] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Id.* at 459–60 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250, 251, 251–52, 106 S.Ct. 2505, 2510, 2511, 2512, 91 L.Ed.2d 202 (1986)). It is clear that functionality is a question of fact, *United States Golf Association,* 749 F.2d at 1033 n. 7 (quoting from Restatement of Torts, § 742, comment a (1938)), and therefore if a nonmoving party raises genuine, material issues of fact, it is unlikely summary judgment can be granted. *But cf. id* at 1034 (Third Circuit upholds district court's grant of summary judgment on the question of functionality).

## B. *The Analysis of Functionality In The Context of a Summary Judgment Application.*

The analysis of functionality begins with a question about the *de facto* functionality of the product, that is, does the article have a functional use. *In re Morton–Norwich Products, Inc.,* 671 F.2d 1332, 1337 (C.C.P.A.1982). The analysis continues into a question of *de jure* functionality, that is, is the product in a particular shape because the product works better in that shape or, put another way, is the shape of a product a utilitarian design of a utilitarian object. *Id.* at 1338–39. Because functionality is a question of degree of design utility, a definitive answer to the *de jure* question depends on how essential a design is to a product's use. *Id.; see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*

456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982).

In order to determine how essential a design is to a product's use, the former Court of Claims and Patent Appeals developed a four-part test. *See Morton–Norwich*, 671 F.2d at 1340–41. Although the Third Circuit Court of Appeals has cited *Morton–Norwich* with approval in defining functionality, it has never explicitly adopted the four-part test. *See United States Golf Association*, 749 F.2d at 1033–34. The test, nevertheless, captures the various factors considered by the Third Circuit in deciding whether a given product is functional and therefore presents a structure within which to understand the various Third Circuit caselaw on the subject. The *Morton–Norwich* test examines:

1. The product's advertising to determine if such reveals any utilitarian aspects of the product. *Morton–Norwich*, 671 F.2d at 1341; *see also American Greetings*, 807 F.2d at 1142 ("If the marketer of a product advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of its functionality.").

2. Any utility patent issued for the product to determine if it reveals any utilitarian aspects of the product. *Morton–Norwich*, 671 F.2d at 1340–41; *see also Sylvania Electric Products*, 247 F.2d at 733–34 n. 2.

3. The method of manufacturing to see if a product was made as it was because it is the least expensive and most efficient way to manufacture the product. *Morton–Norwich*, 671 F.2d at 1341; *see also Standard Terry Mills*, 803 F.2d at 781; *United States Golf Association*, 749 F.2d at 1033 n. 7.

4. Alternate designs for the product in order to discover if the plaintiff has made the product in the only way possible given its intended use. *Morton–Norwich*, 671 F.2d at 1341; *see also Keene Corp. v. Paraflex Industries, Inc.*, 653 F.2d 822, 827 (3d Cir.1981).

In particular, consideration of the latter two factors in the analysis of *de jure* functionality best reflect the inquiry into whether a design is essential to a product's use and thus whether competition is substantially hindered by granting trademark or trade dress protection to a product's design. *Morton–Norwich*, 671 F.2d at 1341. If no other company can compete because the design claimed to be protected by registered trademark or trade dress law has preempted all other useful and inexpensive designs, then the design is likely functional, especially where there is a utility patent. *See Sylvania Electric Products*, 247 F.2d at 734 n. 2 ("It was to prevent just such a situation that the rule was expounded denying registration to functional marks—in other words, Sylvania would have been granted a monopoly by trade-mark to continue exclusive use of a functional element the patent for which had expired.").

The evidence presently before the Court does not reveal that Dentsply's "design results from a comparatively simple or cheap method of manufacturing the article." *Morton–Norwich*, 671 F.2d at 1341. Similarly the record does not reveal whether alternatives exist for the design of an ampule which works equally as effectively as Dentsply's. The Court is mindful that "[t]he fact that any number of standards may be feasible and useful does not mean that the preferred standard is not 'functional'...." *United States Golf Association*, 749 F.2d at 1034. Nevertheless, the record evidence does not demonstrate that Dentsply's ampule possesses the only useful design and it is possible to conceive of ampules which differ from Dentsply's in design yet still perform an equivalent function.

In addition, the deposition testimony of those involved with the production of XR Unidose reveals that alternative designs had been considered for the Kerr ampule. Neal Short, Project Manager for XR Unidose, and Thomas Edward Walas, Kerr's Vice–President of Product Management and Marketing Services, both testified in their respective depositions that a two-toned color-coded cap had been considered for XR Unidose instead of the one-toned cap presently used by XR Unidose and the

Dentsply ampule. *See* Appendix to Dentsply's Brief in Opposition to Kerr's Motion for Summary Judgment, Exhibit C at 94 (Short Deposition); Exhibit D at 29 (Walas Deposition) (D.I. 44). Accordingly, there is evidence in the record that provides support for Dentsply's allegations. Thus it appears that even a superficial inquiry into the latter two factors of the *Morton–Norwich* test raises "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In the same vein, Kerr's reliance on the testimony of the inventor of the '590 patent, Emery Dougherty, accentuates that the issues in this case may be resolved in favor of either the Dentsply plaintiffs or Kerr. That is because rather than proving *de jure* functionality, the testimony simply confirms that Dentsply's ampule has a *de facto* function. Dougherty describes the ampule shown in the patent as "properly to be a regular cylinder" with "straight walls ... hav[ing] uniform thickness" which is "terminated inside, as well as outside, in a hemisphere." *See* Appendix to Kerr's Brief In Support of Its Motion For Summary Judgment, Exhibit C at 2519 (D.I. 38). Further testimony by Dougherty dispenses similar general information, such as that the "discharge-tip is uniform in cross-section," that the cylinder is "regular ... since these things have to be filled at really high rates ...[,]" that the open-ended tip of the ampule "allows filing to proceed without collecting a pocket of air ...[ ]" and that the cap over the tip keeps the ampule "enclosed against contamination...." *Id.* at 2519, 2521 and 2528.

Nothing in the Dougherty testimony definitively suggests that the Dentsply ampule must be its particular shape in order to perform its function or that the ampule's trade dress exhibits only functional features. It is the Court's view that the testimony leaves undefined those terms which need conclusive definitions if summary judgment is to be entered in Kerr's favor. For example, Dougherty speaks of the

Dentsply ampule as consisting of a "regular cylinder" but without further elaboration the Court cannot draw a conclusion about the preclusive effect which the Dentsply ampule has on all other cylinders designed to perform an equivalent function equally as well as the function performed by the Dentsply ampule. Kerr's reliance on such a general statement, as well as on others, such as those informing that the ampule has straight walls and that it is enclosed to prevent contamination, underscores the deficiency of Kerr's argument.

One expert has noted that "[f]unctionality is often a matter of degree, rather than a binary yes-or-no matter." 3 R. Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 19.33 at 132 (L. Altman 4th ed.1983). Summary judgment requires a decisive "yes-or-no" answer before it can be granted, especially where the question presented concerns a matter of a factual nature, such as the question of functionality. At this juncture, the Court cannot confidently answer "yes" to the question of functionality and thus, without undisputed evidence, the Court may only draw conclusions as to the product's *de facto* functionality, leaving the Court to reason in a vacuum and to employ its imagination rather than applying the law to the facts. As the record stands now, "[t]o accept [Kerr's] contentions would be akin to saying that there exists a platonic form of the [ampule] and that [the Dentsply plaintiffs] captured that form...." *Vaughan Mfg. Co. v. Brikam International, Inc.*, 814 F.2d 346, 350 (7th Cir.1987). Thus, the Court concludes that Kerr's application for summary judgment must be denied.

### C. *The Analysis of Functionality Under Delaware Law.*

Although Kerr moved for summary judgment on plaintiffs' Delaware law claims, its briefing did not address such claims. However, since many of the issues discussed above would apply to the Delaware state law claims, the Court concludes that Kerr has not established that it is entitled to

summary judgment on those claims of the plaintiffs.

### III.  CONCLUSION

For the reasons stated above, Kerr's motion for partial summary judgment on all allegations, except those relating to the word trademark COMPULES, in Count I, Count II and Count IV of the plaintiffs' Amended Complaint will be denied.

An Order consistent with this Memorandum Opinion will be entered.

EXHIBIT A

Int. Cl.: 5

Prior U.S. Cl.: 44

# United States Patent and Trademark Office

Reg. No. 1,369,610

Registered Nov. 5, 1985

## TRADEMARK
## SUPPLEMENTAL REGISTER

DENTSPLY INTERNATIONAL INC. (DELA-WARE CORPORATION)
570 WEST COLLEGE AVENUE
YORK, PA 17405

FOR: LIQUID DENTAL MATERIALS CONTAINED IN AN AMPULE, IN CLASS 5 (U.S. CL. 44).

FIRST USE 3-8-1982; IN COMMERCE 3-8-1983.

THE MARK IS A THREE-DIMENTIONAL OUTLINE OF AN AMPULE IN WHICH THE GOODS ARE SOLD.

SER. NO. 474,615, FILED P.R. 4-9-1984; AM. S.R. 8-22-1985.

HELEN ROBERTS WENDEL, EXAMINING ATTORNEY