STANDARD TERRY MILLS, INC.,
Appellant in 86–1160,

v.

SHEN MANUFACTURING COMPANY.

Appeal of SHEN MANUFACTURING
COMPANY, INCORPORATED.

Nos. 86–1125, 86–1160.

United States Court of Appeals,
Third Circuit.

Argued Sept. 11, 1986.

Decided Oct. 16, 1986.

As Amended Nov. 20 and Dec. 19, 1986.

Janis P. Farrell (argued), Hart Baxley Daniels & Holton, New York City, Joan A. Zubras, Steel Gould & Fried, Philadelphia, Pa., for Shen Mfg. Co.

Robert B. Frailey (argued), West Chester, Pa., for Standard Terry Mills, Inc.

Before ALDISERT, Chief Judge, and HIGGINBOTHAM and HUNTER, Circuit Judges.

**OPINION OF THE COURT**

JAMES HUNTER, III, Circuit Judge:

Shen Manufacturing Company, importers and distributors of a kitchen towel known as the Ritz Flemish Wonder towel, appeals the district court's judgment denying Shen's unfair competition claim brought pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982).[1] Standard Terry Mills, manufacturers of a competing towel, appeals from the district court's denial of their motion for attorneys' fees or a partial new trial on the issue of such fees.

Standard Terry originally filed this action requesting a declaratory judgment, invoking the district court's jurisdiction under 15 U.S.C. § 1121 (1982) and 28 U.S.C. § 1338(b) (1982). We have jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1291 (1982). Because we hold that the district court did not err in its application of § 43(a) nor abuse its discretion in denying attorney's fees, we affirm.

I.

Both parties in this case are Pennsylvania corporations and competitors in the kitchen textile products business. In 1961, the John Ritzenthaler Company designed the Ritz Flemish Wonder towel No. 117 and entered into an exclusive distribution arrangement with Abbeloos & Fils, a Belgium firm that manufactures the towel. The Ritz Flemish Wonder towel is made from a weave designated in the industry as "glass type," made from a huckaback weave. This weave is characterized by white squares of relatively coarse material enclosed by stripes of plain, or smooth material.[2] This particular weave produces a strong but absorbent towel that requires no ironing. Shen acquired the John Ritzenthaler Company sometime in late 1960 or early 1961.[3]

In 1984, Standard Terry began to manufacture a towel that it concedes is a copy of the Ritz Flemish Wonder towel that Standard Terry calls the Supra-Weave towel. Like Shen's towel, the Supra-Weave towel is a glass type towel made of 100% cotton. Both towels feature a similar "windowpane

---

1. This section provides, in relevant part:

   **False designations of origin and false descriptions forbidden**

   (a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce.... shall be liable to a civil action ... by any person who believes he is or is likely to be damaged by the use of any false description or representation.

   This section includes within its scope common law, or unregistered, trademark infringement. *See United States Golf Association v. St. Andrews Systems,* 749 F.2d 1028 (3d Cir.1984).

2. "Huckaback" is defined in *A Dictionary of Textile Terms by DAN RIVER* (12th ed. 1976) as "[c]loth [that] has a honeycomb effect; the filling yarns are slackly twisted to aid absorption. Material is heavy.... In white or colors. Very absorbent, durable, serviceable for towels and will withstand rough use. Made of linen or cotton." The Manchester Textile Institute's *Textile Terms and Definitions* (7th ed. 1975) similarly defines the term as "[a] weave used principally for towels and glass-cloths in which a rough-surface effect is produced on a plain-ground textile by short floats, warp on one side and weft on the other."

3. Standard Terry argues that Shen has not shown that it owns any interest in the trade dress of the Ritz Flemish Wonder towel because it did not prove that John Ritzenhaler designed the towel. Because Standard Terry did not raise this issue at trial, we will not consider it here. *See Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir.1976).

check" pattern created by coloring the stripes of plain weave surrounding the huckaback weave. The differences between the two towels are relatively minor. The Supra-Weave towel is smaller than the Ritz towel, woven in a two-ply as opposed to a one-ply construction, and the colored stripes are slightly brighter. The towels also differ in that the Ritz Flemish Wonder towel has both horizontal and vertical border stripes while the Supra-Weave towel has only a horizontal border stripe. The labels on the towels differ completely in appearance.

In early June 1984, Shen discovered Standard Terry's Supra-Weave towel at a trade show in New York City. On June 11, Shen's counsel wrote Standard Terry asserting Shen's common law trademark claim in its towel under § 43(a) of the Lanham Act and demanding that Standard Terry cease marketing the Supra-Weave towel. After further communications between counsel proved unavailing, Standard Terry brought the instant action for a declaratory judgment in Montgomery County Court. Shen successfully moved for removal to the United States District Court for the Eastern District of Pennsylvania, and counterclaimed for injunctive relief against Standard Terry.

After a bench trial the court held that both the weave and the windowpane check

pattern of the Ritz Flemish Wonder towel were functional and therefore could not be protected under § 43(a) of the Lanham Act.[4] The court relied on our discussion of the doctrine of "aesthetic functionality" in *Keene Corporation v. Paraflex Industries,* 653 F.2d 822 (3d Cir.1981) ("*Paraflex Industries*"), in reaching its conclusion that the towel's trade dress did not qualify for § 43(a) protection. The court also denied Standard Terry's application for attorneys' fees under § 35 of the Lanham Act, 15 U.S.C. § 1117 (1982).[5]

## II.

To succeed in a claim of trade dress infringement, Shen needed to prove: (i) that the Ritz Flemish Wonder towel's trade dress is nonfunctional; (ii) that its trade dress had acquired a secondary meaning among consumers as a means of identifying the source of the product; and (iii) that public was likely to confuse the Ritz Flemish Wonder with the Supra-Weave towel. *See Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, 151 (3d Cir.1984). The district court decided this case on the basis of its evaluation of the first factor.

The functionality doctrine accommodates the twin purposes behind the Lanham Act. It protects the manufacturer (and the consumer) from the copying of those fea-

---

**4.** Shen also asserts its common law trademark rights under § 1126 of the Pennsylvania Trademark Act, 54 Pa.Stat.Ann. §§ 1101–26 (Supp. 1986). The parties appear to agree that the elements of common law trademark infringement under Pennsylvania and federal law are identical, a conclusion reached by a number of district courts. *See University of Pittsburgh v. Champion Products, Inc.,* 566 F.Supp. 711, 719 (W.D.Pa.1983); *Artus Corp. v. Nordic Co., Inc.,* 512 F.Supp. 1184, 1187–88 (W.D.Pa.1981): *International Society for Krishna Consciousness, Inc. v. Stadium Authority,* 479 F.Supp. 792, 798 (W.D.Pa.1979). Our review of these cases and Pennsylvania decisions, *see, e.g., Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 534–35, 266 A.2d 87, 90 (1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971), leads us to conclude that except for the element of interstate commerce required to support a claim under the Lanham Act, the two causes of action are sufficiently similar to permit us to restrict our discussion to the federal claim alone.

**5.** This section provides, in pertinent part:
**Recovery for violation of rights; profits, damages and costs; attorney fees**
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of such action.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.
In 1984, after this suit was filed, Congress added a treble damages provision for the knowing use of a counterfeit trademark and redesignated the above provision as § 1117(a). *See* 15 U.S.C. § 1117 (Supp. III 1985).

tures that signify a product's source (and quality) and encourages competition by preventing one manufacturer from acquiring a monopoly by attempting to trademark those features of a design essential to a successful product of that type. *See W.T. Rogers Co. v. Keene,* 778 F.2d 334, 338–39 (7th Cir.1985); *Paraflex Industries,* 653 F.2d at 824. As we previously have observed,

> the essence of the question [of functionality] is whether a particular feature of a product or service is substantially related to its value *as a product or service, i.e.,* if the feature is part of the "function" served, or whether the primary value of a particular feature is the identification of the provider.

*United States Golf Association v. St. Andrews Systems,* 749 F.2d 1028, 1033 (3d Cir.1984), *citing Morton-Norwich Products, Inc.,* 671 F.2d 1332 (C.C.P.A.1982); *see Ives Laboratories, Inc. v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir.1979) (functional features are those that prove "an important ingredient in the commercial success of the product" rather than simply an "arbitrary embellishment—primarily adopted for the purposes of identification and individuality").

Shen's claim that the trade dress of its Ritz Flemish Wonder towel is protected by § 43(a) may be analyzed by looking to the towel's two distinguishing features, the huckaback weave and the windowpane check design. Standard Terry presented evidence that the weave originated in Europe in the early 19th century and presently is used widely in the textile industry in the manufacture of glass type toweling. There is general agreement between the parties that huckaback weave is a superior material for toweling. On the basis of this evidence, the district court concluded that the Ritz Flemish Wonder towel's huckaback weave was functional. We agree: the weave is directly related to the function of the towel and does not serve to identify any particular towel producer.

The proper characterization of the towel's windowpane check design is governed by the related doctrine of aesthetic functionality. In this circuit, a particular design is nonfunctional, and therefore entitled to common law trademark protection, if the design "is not significantly related to the utilitarian function of the product, but is merely arbitrary." *Paraflex Industries,* 653 F.2d at 825. Thus, we held in *Paraflex Industries* that the shape of an outdoor luminaire could not be the subject of § 43(a) protection when the evidence showed that its shape functioned to enhance its architectual compatibility with the structures on which it could be mounted. *Id.* at 826. Standard Terry presented evidence that the colored stripes in the windowpane check were made of plain woven fabric which gave the towel strength and durability, two features that are lacking in pure huckaback fabric. Standard Terry also demonstrated that windowpane check is a generic term in the textile industry as well as a favorite pattern for kitchen textiles. Faced with this evidence, the trial court concluded that Standard Terry's check pattern served to make the Supra-Weave towel strong, durable, and compatible with contemporary kitchen decor. The court recognized that Standard Terry could have made some slight variations in the check pattern without sacrificing the workability of its product. However, relying on our decision in *Paraflex Industries,* the court concluded that Standard Terry's failure to make such miniscule changes did not render its design nonfunctional. *See, id.* at 827. We cannot say the district court's finding regarding the functionality of the check pattern was clearly erroneous. *See Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 850 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985) (functionality is a question of fact). We therefore conclude that Standard Terry's imitation did not constitute unfair competition or trademark infringement.

### III.

Standard Terry argues that the district court abused its discretion in denying its

application for attorneys' fees under § 35 of the Lanham Act. In particular, Standard Terry alleges that the following actions constitute grounds for an award of attorneys' fees: Shen's initial assertion of a protected interest in the Ritz Flemish Wonder's trade dress; Shen's alleged inability to support its claim that the trade dress had acquired a secondary meaning in the market and to substantiate other pretrial assertions of the towel's unique qualities; and Shen's use of a copyright symbol on the towel's label despite the Copyright Office's denial of Shen's application for copyright registration.

Before we review the district court's decision, we face the initial question whether attorney's fees may be awarded at all in a suit for unfair competition under the Lanham Act. The general or "American" rule is that a prevailing party ordinarily may not recover attorneys' fees absent statutory authorization. In 1975, Congress amended § 35 to provide for awards of attorneys' fees in "exceptional cases" in registered trademark infringement suits. Standard Terry argues that § 35 should apply as well to actions for common law trademark infringement brought under § 43(a) despite the statute's clear requirement that the trademark be one "registered in the Patent and Trademark Office."[6] Although § 35's language seems clearly to preclude an award of attorneys' fees brought for actions to enforce unregistered trademarks, a number of appellate courts have extended § 35 in this manner. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1025–26 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453–58 (11th Cir.1984); *Metric & Multistandard Components v. Metric's Inc.*, 635

F.2d 710, 715–16 (8th Cir.1980). While these courts observed that the extension of § 35's remedial scheme to § 43(a) actions is consistent with Congress's underlying goals in passing the Lanham Act, *see Rickard*, 735 F.2d at 457, the motivation behind this judicial gloss is the realization that the federal courts would face the undesirable prospect of creating a common law remedy for § 43(a) rights were they to hold that § 35's remedies did not apply in common law trademark infringement suits. *See Rickard*, 735 F.2d at 457; *Metric & Multistandard Components*, 635 F.2d at 715.

▪ Like the district court below, we have doubts whether we should rectify Congress's oversight and hold that attorney's fees are available in this case. We previously have assumed without holding that § 35 applies to common law trademark actions brought under the Lanham Act, *see Donsco, Inc. v. Casper Corporation*, 587 F.2d 602, 608 (3d Cir.1978), and we refrain today from deciding the issue because the record does not reveal that the district court abused its discretion in denying Standard Terry's application for fees. We cannot agree with Standard Terry that Shen's claim of common law trademark protection was groundless or brought primarily for the purpose of harassing Standard Terry. The record reveals that Shen's conduct is consistent with the vindication of rights that it believed in good faith were infringed by Standard Terry's Supra-Weave towel. Nor do we believe that Shen's temporary use of a copyright symbol should be a factor in the calculation as there is no showing that it has any connection with this suit: Shen never claimed that Standard Terry had infringed a registered copyright. In short, Standard Terry has not shown that this is an exceptional case that warrants attorneys fees award.[7]

---

**6.** For the text of § 35, *see supra* note 4.

**7.** In their reply brief, Standard Terry argues that our recent decision in *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d Cir.1986) concerning attorneys' fees awards under § 101 of the Copyright Act, 17 U.S.C. § 505 (1982), controls this issue. Although *Lieb* is certainly instructive, it does not provide the legal precepts

governing attorney fees under § 35 of the Lanham Act. Unlike the Lanham Act provision, the Copyright Act does not restrict attorneys' fees to "exceptional cases." According to the Senate Report, Congress intended the Lanham Act attorneys' fees provision to encompass cases such as where the trademark infringement was "'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'"

■ Finally, Standard Terry urges that we charge Shen for the costs of this appeal pursuant to 28 U.S.C. § 1912 (1982) and damages under Fed.R.App.P. 38. Such an award is appropriate only when the appeal is wholly without merit, however. *See Sauers v. Commissioner of Internal Revenue,* 771 F.2d 64, 70 n. 9 (3d Cir.1985). In light of our discussion above, we do not believe that the issues raised by Shen's appeal are completely frivolous and therefore accordingly decline to award either costs or damages to Standard Terry.

### IV.

It may seem anomalous that the law will not protect the producer of a successful product from an admitted copier. Nevertheless, the functionality doctrine protects consumers—and producers—from the monopoly that would result if a producer could protect those features that, in effect, provide the product with its essential characteristics. We agree with the district court that the weave and the decorative pattern of the Ritz Flemish Wonder towel are such characteristics. Accordingly, we will affirm the district court's judgment.

S.Rep. No. 1400, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7132, 7133, or where the trademark owner brings an "unfounded suit" to harass a competitor. Id. at 1974 U.S. Code Cong. & Ad. News at 7136. This language indicates that bad faith is a relevant inquiry for the purposes of § 35. We cannot say on this record that Shen's claims were either groundless or brought in bad faith.