**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1609 & 23-1705
_____

AVCO CORPORATION
Appellee/Cross-Appellant in No. 23-1705

v.

TURN AND BANK HOLDINGS, LLC; PRECISION AIRMOTIVE, LLC
Appellants/Cross-Appellees in No. 23-1609

.

v.

AVSTAR FUEL SYSTEMS, INC.
Appellee/Cross-Appellant in No. 23-1705
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Case No. 4:12-cv-01313)
District Judge:  Honorable Matthew W. Brann
_____

Argued:  June 4, 2024
_____

Before:  CHAGARES, Chief Judge, CHUNG and FISHER, Circuit Judges.

(Opinion filed: July 17, 2024)

Carmelle F. Alipio
Richard T. Matthews [ARGUED]
Andrew R. Shores
Robert C. Van Arnam
Williams Mullen
301 Fayette Street
Suite 1700
Raleigh, NC 27601

Christopher R. Healy
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th and Arch Street
Philadelphia, PA 19103

Justin G. Weber
Troutman Pepper Hamilton Sanders LLP
100 Market Street
P.O. Box 1181, Suite 200
Harrisburg, PA 17108

Counsel for Appellants/Cross-Appellees

Alexander Gazikas
Amy M. Saharia [ARGUED]
Janae N. Staicer
Williams & Connolly
680 Maine Avenue SW
Washington, DC 20024

Counsel for Appellees/Cross-Appellants

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

These appeals arise from protracted trademark infringement litigation. After the District Court determined that Avco Corporation and AVStar Fuel Systems, Inc. infringed upon Turn and Bank Holdings, LLC and Precision Airmotive, LLC's (collectively, "Precision") trademark as a matter of law and a jury found they did so willfully, the District Court held a bench trial for remedies. The District Court awarded Precision only a small portion of its requested damages. Precision appeals that remedies judgment. Avco and AVStar bring a conditional cross-appeal as to the District Court's trademark infringement ruling; if we are to disturb the remedies judgment, they appeal the trademark infringement liability judgment. We will affirm the District Court's remedies judgment and, therefore, will not address the conditional cross-appeal.

I.

Because we write for the parties, we recite only the facts pertinent to our decision. Precision and its predecessors-in-interest have produced fuel-injection servos for aircraft engines, among other products, since the 1960s.[1] These servos are engine parts that control the delivery of a combustible fuel-air mixture to general aviation aircraft engines. Precision manufactures and sells servos to two main classes of purchasers: (1) aircraft engine manufacturers and (2) aircraft owners and servicers who perform maintenance and

_____

[1] Precision's predecessor-in-interest filed for bankruptcy following the initiation of the underlying litigation, out of which Turn and Bank Holdings, LLC purchased the relevant product lines of fuel-injection servos and other assets and licensed their use to Precision Airmotive, LLC.

3

engine overhauls in an aftermarket. Appendix ("App.") 261. Precision's servos display marks of either "RS" or "RSA."

Avco, an aircraft engine manufacturer, was Precision's biggest customer of RSA-type servos. In fact, Precision was Avco's sole supplier of these servos, selling them to Avco's unincorporated division, Lycoming Engines, located in Pennsylvania. But the companies' relationship eventually deteriorated and Avco sought a new servo supplier. Avco approached AVStar, a company that overhauled and repaired aircraft fuel systems, and asked whether AVStar could develop and provide servos and other parts for Avco. Avco and AVStar entered into a series of agreements under which Avco agreed to pay AVStar for the development and manufacturing of these servos. AVStar ultimately succeeded and sold servos to Avco bearing the same "RS" or "RSA" marks found on Precision's servos.

Avco initiated this litigation against Precision in 2012, shortly after Avco sold its first engine using an AVStar servo with the RSA marks. Precision impleaded AVStar and asserted federal and state counterclaims for trademark infringement against both Avco and AVStar. The parties then cross-moved for summary judgment. The District Court granted Precision's motion for summary judgment and denied Avco and AVStar's in 2018. It held that Precision's RSA marks were protectible trademarks, that Avco and AVStar infringed upon Precision's trademark, and that Avco and AVStar could not make out a fair use defense.

The District Court then presided over a jury trial in 2022 for willful infringement. The jury found that Avco and AVStar had willfully infringed Precision's trademarks.

4

The District Court conducted a bench trial on remedies immediately following the jury trial. It considered Precision's requests for lost profits, disgorgement of Avco and AVStar's profits, and other relief including attorneys' fees, enhanced damages, and punitive damages. The District Court declined to award Precision any of its claimed $8,929,582 in lost profits. It disgorged only $264,818 of the $10,980,278 in profit that Avco and AVStar made from servos and airplane engines containing servos bearing the RSA marks. Finally, it declined to award Precision any attorneys' fees, enhanced damages, or punitive damages. Precision timely appealed this judgment. Avco and AVStar then timely cross-appealed the summary judgment liability ruling in the event that this Court were to reverse the remedies judgment.

## II.

The District Court had subject matter jurisdiction over the federal and state trademark and unfair competition claims pursuant to 28 U.S.C. §§ 1331, 1367. Our appellate jurisdiction is authorized by 28 U.S.C. § 1291. We review a District Court's decisions on equitable remedies under the Lanham Act, including those for lost profits, disgorgement, and attorneys' fees, for abuse of discretion. See Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc., 855 F.3d 163, 169-70 (3d Cir. 2017); Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 173 (3d Cir. 2005) (citing Gucci Am., Inc. v. Daffy's Inc., 354 F.3d 228, 242 (3d Cir. 2003)). We review the District Court's factual findings following a bench trial for clear error and its legal conclusions de novo. Covertech, 855 F.3d at 169-70; Banjo Buddies, 399 F.3d at 173.

5

III.

The Lanham Act creates federal causes of action for trademark infringement and unfair competition. See 15 U.S.C. §§ 1114, 1125(a). This Court analyzes both types of claims in the same manner.[2] See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Under the Lanham Act, a plaintiff whose trademark is infringed upon may be entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "The court in exceptional cases may award reasonable attorney fees to the prevailing party" and enhance the actual damages awarded "not exceeding three times." Id. Although punitive damages are not available under the Lanham Act, they may be available under operative state law.[3] See Caesars World, Inc. v. Venus Lounge, Inc., 520 F.2d 269, 274 (3d Cir. 1975); J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 30:96 (5th ed. 2024, Westlaw) [hereinafter McCarthy on Trademarks and Unfair Competition]. We address the three categories of damages the District Court considered — lost profits, disgorgement, and other damages — in turn.

---

[2] Although Precision also asserted a Pennsylvania unfair competition counterclaim. this state claim is analogous to the Lanham Act claims, so we analyze them together. See Standard Terry Mills, Inc. v. Shen Mfg. Co., 803 F.2d 778, 780 n.4 (3d Cir. 1986). While we limit our discussion to the federal claims, the same analysis applies to both state and federal claims. See id.

[3] The parties agree that Pennsylvania law applies, as do we.

A.

We see no abuse of discretion in the District Court's decision to award Precision no lost profits. A trademark plaintiff may recover the profits it lost from the infringer's use of the trademark. See 15 U.S.C. § 1117(a); see also Gucci Am., 354 F.3d at 242. The plaintiff bears the burden of proving both causation and the amount of lost profits. See Gucci Am., 354 F.3d at 242 n.15 ("The [trademark] owner has the burden of proving that lost profits are attributable to the unlawful use of the mark."); 4 McCarthy on Trademarks and Unfair Competition § 30:72. Although this Court has never held which type of causation the plaintiff seeking lost profits must prove, some of our sister Courts of Appeals, the leading trademark treatise, and the parties agree that a plaintiff must prove the profits he would have made but for the defendant's infringement. See Jason Scott Collection, Inc. v. Trendily Furniture, LLC, 68 F.4th 1203, 1220 (9th Cir. 2023); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995); 4 McCarthy on Trademarks and Unfair Competition § 30:59. While the plaintiff has this burden, "it does not have to negate every conceivable intervening factor which might have caused a decline in sales." 4 McCarthy on Trademarks and Unfair Competition § 30:79.

Precision argues that the District Court improperly applied the but-for causation standard and held it to a higher standard, erroneously requiring Precision to prove that Avco and AVStar's infringement was the "sole cause" of the lost profits. Precision Br. 42. It points to record evidence that purportedly shows that Avco required AVStar to include the RSA marks on its servos to demonstrate that it proved causation. But we detect no legal error in the District Court's causation analysis and no clear error in its

7

factual determinations. Contrary to what Precision argues, the District Court applied a but-for causation standard. See App. 83. Applying this standard, it considered that Avco required AVStar to use the RSA marks on its servos. See App. 82; see also App. 72 ¶ 5. The District Court determined that Precision did not carry its burden of showing that Avco purchased AVStar's servos because of the RSA marks and that to the contrary, the evidence showed that Avco purchased AVStar's servos for a litany of reasons other than the RSA marks, including Precision's high prices, unreliability and delivery issues, its ability as Avco's sole supplier to make negotiation ultimatums, and Avco's general preference to have multiple servo suppliers. See App. 83, 87. Moreover, the District Court chose to credit Avco's expert witness in damages over Precision's, finding that Avco's economic data showing that AVStar's servos sales increased after it removed the RSA marks from its products belied Precision's argument that the sales were motivated by use of the marks. See App. 83-89.

Put simply, the District Court appropriately considered the fact that Avco asked AVStar to use the RSA marks. It did not find that the RSA marks were a cause of AVStar's servo sales to Avco at all. Nor did it require Precision to prove the use of the marks was the sole reason for the sales. And its factual findings and credibility determinations underpinning these conclusions are all supported by the record. So we detect no error and will affirm.

8

## B.

We also see no abuse of discretion in the District Court's decision to disgorge only a portion of AVStar's servo sales. Disgorgement of the defendant's profits is available in three circumstances: "if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement." Banjo Buddies, 399 F.3d at 178. This Court has "emphasized the 'or' in this construction—noting that because [t]hese rationales are stated disjunctively; any one will do." Marshak v. Treadwell, 595 F.3d 478, 495 (3d Cir. 2009) (alteration in original) (quotation marks omitted). A plaintiff's "actual damages" are thus sufficient, but not necessary, for the availability of disgorgement of a defendant's profits because the remedy may still be available on the basis of deterrence or the defendant's unjust enrichment. Id. at 495; see also 4 McCarthy on Trademarks and Unfair Competition § 30:59.

In addition to determining whether disgorgement is available, courts must consider whether equity supports disgorging the defendant's profits. Courts must balance the equities and consider "(1) whether the [infringer] had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Kars 4 Kids Inc. v. Am. Can!, 8 F.4th 209, 223 (3d Cir. 2021) (quoting Banjo Buddies, 399 F.3d at 175) (alteration in original).

If the disgorgement remedy is available and supported by equity, "the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). The burden then

shifts to the defendant to "prove all elements of cost or deduction claimed." Id.; see also Covertech, 855 F.3d at 177 ("[T]he trademark owner is tasked with proving the infringer's sales before the burden of proof shifts to the defendant to show costs and deductions."). The defendant may accomplish this by "demonstrat[ing], if [it] can, that profits were not derived from the infringing use." Williamson-Dickie Mfg. Co. v. Davis Mfg. Co., 251 F.2d 924, 927 (3d Cir. 1958); see also Gucci Am., 354 F.3d at 242.

The District Court misstated the law when conducting its disgorgement analysis, but we will affirm because it still did not abuse its discretion in disgorging only some of AVStar's profits. See Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 712 (3d Cir. 2004) ("Although a district court's application of an incorrect legal standard would normally result in a remand, we need not remand if application of the correct legal standard could support only one conclusion." (quotation marks omitted)); see also TD Bank N.A. v. Hill, 928 F.3d 259, 270 (3d Cir. 2019) ("[W]e may affirm on any basis supported by the record, even if it departs from the District Court's rationale.").

In its discussion of how much of Avco and AVStar's profits are subject to disgorgement,[4] the District Court stated that "[m]ore importantly, disgorgement is warranted under equity only where [Precision] has suffered actual harm." App. 95. It cited no authority for this statement. This is not a correct statement of law. See Marshak, 595 F.3d at 495 ("[Plaintiff] did not need to establish actual damages to justify the

---

[4] Given that the District Court discussed "actual harm," App. 95, at this stage of its analysis, the District Court may have been using "actual harm" to communicate that disgorgement was limited to compensating Precision and could not be awarded as punitive damages.

10

imposition of an accounting of profits—she needed only to show that an accounting was necessary to deter infringement or that [the defendant] and his associates were unjustly enriched."); 4 McCarthy on Trademarks and Unfair Competition § 30:59 ("[T]he inability of plaintiff to prove actual damages does not preclude an award of the infringer's profits.").

Nonetheless, the District Court still determined that disgorgement was available to Precision and supported by equity. See App. 97-100. It awarded Precision $264,818 of the $10,980,278 in profit that Avco and AVStar made from servo and airplane engine sales that used the infringing mark. App. 93, 97, 100. This legal error caused Precision no harm; the District Court agreed with Precision that it was entitled to seek disgorgement and that disgorgement was supported by equity.[5] Thus, even if the District Court had erred, is not clear how vacating and remanding would redress this error because the District Court already ruled in favor of Precision on these issues.[6]

---

[5] Although Precision argues that disgorgement is necessary to deter infringement and to remedy unjust enrichment, see Precision Br. 52-56, these arguments concern the availability of disgorgement, which the District Court already held was available. To the extent that Precision argues that the District Court's error somehow diminished Avco and AVStar's burden, by requiring them to disprove only that the profits from third-party sales were not derived from the infringing use, we reject that argument. The District Court explicitly analyzed whether Avco and AVStar met their burden as to the entire $10,980,278 at issue, as discussed below.

[6] Nor do we find Precision's argument that the District Court's misstatement of law "infected" its balancing of the equities convincing. Precision Br. 57; see also id. at 58. The District Court balanced all six factors and held that equity did support disgorgement. See App. 100. It ruled in Precision's favor on this issue. To remand this issue to the District Court for rebalancing would be a wheel-spinning exercise.

11

We similarly see no error in the District Court's holding that Avco and AVStar carried their burden to discount most of their profits from disgorgement. The District Court first held that Precision met its burden of demonstrating Avco and AVStar's profits. It then shifted the burden to Avco and AVStar to demonstrate that their profits did not result from use of the infringing mark. App. 92. The District Court concluded that Avco and AVStar largely, but not totally, succeeded. App. 93. It held that most of the disgorgement Precision requested was not, as required, compensation for any harm suffered, see 15 U.S.C. § 1117(a), for the same reason it provided in its lost profits analysis: that is, Avco would have purchased AVStar servos no matter whether the RSA marks were on the servos because Avco was motivated by a litany of unrelated factors supported by the record. See App. 93-94. This accounted for 98% of AVStar's total sales. App. 93. The amount it did disgorge (AVStar's remaining profits from sales to third parties) were the profits that Avco and AVStar failed to demonstrate did not result from use of the infringing mark. The District Court held this because Avco and AVStar offered no evidence that these third-party sales were obtained for reasons other than the use of the RSA marks. App. 94-97; App. 101 n.131.[7] The District Court did not err in

---

[7] Precision cites two decisions to support its argument: Marshak v. Treadwell, 595 F.3d 478 (3d Cir. 2009), and W.E. Basset Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970). But neither decision controls our analysis. Both cases concerned different procedural postures and much more egregious conduct by the trademark infringer. See Marshak, 595 F.3d at 482, 495; W.E. Basset, 435 F.2d at 663-64. Here, the District Court never issued an injunction that Avco and AVStar could have attempted to evade, Avco and AVStar promptly ceased use of the RSA marks after the District Court's summary judgment ruling, and Precision points to no bad faith conduct by Avco and AVStar similar to that in these cases.

12

finding that AVStar only failed to meet its burden as to these sales and did not abuse its discretion in awarding these disgorged profits to Precision.

In sum, the District Court's error was in its explication of the availability analysis, not in its calculation analysis. And despite the error, the District Court still held in favor of Precision on the availability of a disgorgement remedy. This error had no bearing on the calculation of disgorgement. And reviewing the District Court's disgorgement calculations, we detect no error for similar reasons as stated above. So we will affirm.

C.

We see no abuse of discretion in the District Court's decision to award no attorneys' fees, enhanced damages, or punitive damages.

1.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The statute does not define such exceptional cases, but our caselaw provides some guidance. Courts determining attorneys' fees awards under the Lanham Act must engage in a two-step inquiry. See Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314 (3d Cir. 2014). The test is as follows:

> First, the District Court must decide whether the defendant engaged in any culpable conduct. We have listed bad faith, fraud, malice, and knowing infringement as non-exclusive examples of the sort of culpable conduct that could support a fee award. Moreover, the culpable conduct may relate not only to the circumstances of the Lanham Act violation, but also to the way the losing party handled himself during the litigation. Second, if the District Court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award.

13

Id. (quoting Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007)). Under the second step, a case may be "exceptional" when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" Id. at 315 (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). Precision offers no independent reason why this Court should vacate and remand the District Court's attorneys' fees decision. It instead argues that we should vacate the District Court's decision not to award attorneys' fees because its ruling was "predicated on the court's antecedent decisions not to award Precision its lost profits or disgorge AVStar and Avco's ill-gotten gains." Precision Br. 59. It does not point to any record evidence of Avco and AVStar's purportedly culpable conduct, nor does it argue that the circumstances are sufficiently exceptional to warrant an award. See id. at 59-60. Because we will affirm the District Court's decisions on lost profits and disgorgement and Precision offers no independent argument as to entitlement to attorneys' fees, we will affirm the District Court's decision.

2.

If a court awards enhanced damages, "such an enhancement 'shall constitute compensation and not a penalty.'" Kars 4 Kids, 8 F.4th at 224 (quoting 15 U.S.C. § 1117(a)). Again, Precision offers no independent reason why we should vacate and remand for a new consideration of enhanced damages. And the District Court considered the fact that the $264,818 it disgorged "likely represents an overestimate of any profits gained from AVStar's use of the RSA Marks." App. 101. Therefore, we will affirm the District Court's decision on enhanced damages.

14

3.

Finally, we will affirm the District Court's decision not to award punitive damages for similar reasons. Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)); see also Tunis Bros. Co., Inc. v. Ford Motor Co., 952 F.2d 715, 740 (3d Cir. 1991) (discussing Pennsylvania law); Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 208 (Pa. 1976) (affirming a trial court order awarding punitive damages for trademark infringement). Punitive damages are "penal in nature" and "proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton[,] or reckless conduct." Hutchinson, 870 A.2d at 770; see also Tunis Bros., 952 F.2d at 740. The "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." Brown v. End Zone, Inc. 259 A.3d 473, 487 (Pa. Super. Ct. 2021) (quoting Hollock v. Erie Ins. Exch., 842 A.2d 409, 419 (Pa. Super. Ct. 2004)). Pennsylvania courts consider "(1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." Id.; see also Tunis Bros., 952 F.2d at 740.

Just as Precision failed to offer an independent reason or produce an argument as to entitlement to attorneys' fees or enhanced damages, it fails to do so for punitive damages. Precision points to no record evidence showing that Avco and AVStar's conduct was outrageous, evinced an evil motive, or displayed reckless indifference. Nor

15

does it make any argument addressing the character of the act, nature and extent of the harm, or the wealth of the defendant. We also see no abuse of discretion with the District Court's analysis of the issue. Therefore, we will affirm the District Court's decision not to award punitive damages, as well.

IV.

For the foregoing reasons, we will affirm the District Court's judgment. Because we do not disturb this judgment, we will not reach Avco and AVStar's conditional cross-appeal and deem it moot.

16